**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harry KOPLIN, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**CHICAGO LAUNDRY BUILDING COMPANY, a corporation, Harry Koplin and Sara Leah Steiner, Defendants-Appellants.**

**UNITED STATES of America, Plaintiff-Appellee.**

v.

**ZEPHYR LAUNDRY MACHINERY COMPANY, a corporation, Harry Koplin and Sara Leah Steiner, Defendants-Appellants.**

**No. 11372.**

United States Court of Appeals Seventh Circuit.

Nov. 3, 1955.

Rehearing Denied Dec. 7, 1955.

Jury for the Northern District of Illinois, Eastern Division, charging wilful and knowing attempts to defeat and evade income taxes owed to the United States, in violation of Title 26 U.S.C.A. § 145(b). One indictment pertained to the individual tax of defendant Harry Koplin and his wife jointly for 1945, and of Mr. Koplin alone for 1946; another indictment pertained to the tax of corporate defendant Chicago Laundry Building Company for its fiscal years ending June 30, 1945 and June 30, 1946, and another indictment pertained to the tax of the corporate defendant Zephyr Laundry Machinery Company for its fiscal years ending February 28, 1946 and February 28, 1947. The defendant Steiner was not charged with an evasion of her own income taxes but with aiding and abetting the other defendants in attempting to defeat and evade.

The indictments upon government's motion were consolidated for trial. Verdicts of guilty were rendered by the jury against all defendants in each case except the defendant Steiner who was found not guilty of aiding in the attempt by Koplin and his wife to defeat and evade taxes. Upon the verdicts thus rendered the trial court entered judgments from which the appeals come to this court.

The defendant Steiner and the other defendants, that is, Koplin and the two corporate defendants, are represented in this court by separate counsel and one brief has been filed on behalf of Steiner and another on behalf of Koplin and the corporate defendants.

A. Bradley Eben, Chicago, for defendants-appellants Harry Koplin, Chicago Laundry Building Co. and Zephyr Laundry Machine Co.

Harold Stickler, Thomas Dodd Healy, Chicago, Ill., for defendant-appellant, Sara Leah Steiner.

Robert Tieken, U. S. Atty., Anna R. Lavin, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Edward J. Calihan, Jr., Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before MAJOR and SWAIM, Circuit Judges, and PLATT, District Judge.

MAJOR, Circuit Judge.

On November 13, 1951, three separate indictments were returned by the Grand

Numerous alleged prejudicial errors are assigned as grounds for a reversal of the judgment. One issue in common raised by all defendants is that they were denied the right to the assistance of counsel as guaranteed by the Sixth Amendment of the Constitution of the United States. We have reached the firm conclusion that this issue must be decided in favor of the defendants and that a reversal of the judgments is required. This being our conclusion, we think it unnecessary to state or discuss the many

other errors urged here. Obviously, it would be presumptuous on our part to anticipate that the same alleged errors will be committed on another trial.

In the view which we thus take, we shall relate only the facts as they appear to bear upon the contention that defendants were deprived of their constitutional right to the assistance of counsel. Shortly after the indictments were returned, Mr. A. Bradley Eben was employed to represent all the defendants by Mr. Jules Dashow, a member of the firm of Brown, Dashow & Zeidman, house counsel for Zephyr. Dashow had been secretary of that corporation since 1947. Koplin was president and Steiner nominally secretary of the corporate defendants, and the latter was employed as secretary to Koplin. When Eben filed his appearance in the cases he wrote in the name of Brown, Dashow & Zeidman, but no member of this firm participated in any of the proceedings or appeared before the trial court until Dashow was subpoenaed and called by the government as a witness to identify books and records of the corporate defendants. Dashow, other than his appearance as a witness, did not participate in the trial.

Eben conducted an investigation and made preparation for trial of the cases. Numerous preliminary motions were made on behalf of the defendants, on which hearings were had and adverse rulings made. One of the important motions was to dismiss the indictments and suppress evidence mainly on the ground that the indictments had been procured on evidence resulting from a voluntary disclosure made by Koplin on a promise of immunity from prosecution. This motion was set for hearing October 25, 1954. About a week before that date Eben had inquired of the minute clerk for the trial judge as to when the cases were likely to be reached and was informed that the court would first try another criminal case and would then try a number of anti-trust suits. Eben also conferred with the assistant government prosecutor in charge of the instant cases and was advised that the government was not planning to proceed immediately because of his engagement in other court matters. On October 25, 1954, however, the court informed Eben that the defendants' cases would immediately go to trial upon termination of the case then being heard. In thus moving the cases to the top of the trial call, the court advanced them over one hundred other cases at that time awaiting trial.

On October 28, 1954, Eben as counsel for defendants moved for a continuance, supported by affidavit in which he recited in effect that he had been led to believe that a trial of these cases was not imminent and that while he had done much preliminary work in preparing for trial there was still much to be done. He also alleged that he was counsel for the plaintiff in Spitzer v. Bradshaw-Praeger, an important breach of warranty suit pending since 1949 in the Circuit Court of Cook County; that he had been advised by Judge Harry M. Fisher of the state court that he would not recognize counsel's other engagements when that case was called and that as a result he had been engaged for the past thirty days with his client, who had come from California, in the preparation of that case for trial. The trial judge in denying this motion among other things stated, "I will say, before I read your affidavit, that we must get rid of these old criminal indictments. These indictments are 1951 indictments, and we are now in 1954. * * * You are not on trial before Judge Fisher, and Judge Fisher will have to respect your engagement, so you are going to be on trial here. As you know, I served in that building a long time, and lawyers tell me that you can appear before Judge Fisher each morning for nine months, every morning, and still not go to trial. The mere fact that you have a case on the Circuit Court list there is of no concern to me. I am charged with the responsibility of getting rid of these old indictments, and I am going to get rid of them."

On October 28, 1954, when the motion for continuance was denied, the court also denied defendants' motions to dis-

miss and suppress, and set the cases for trial on November 1, 1954. On November 1, 1954, defendants appealed to this court from the order denying a continuance and at the same time sought the writ of mandamus directed at the trial judge. When informed of this action, the trial court continued the cases to November 8, 1954, and again to November 10, 1954, awaiting action by this court. This court dismissed defendants' appeal as being premature and denied the petition for writ of mandamus.

On November 8, 1954, the Spitzer case in the state court was number one on the trial calendar, and it remained in that position until the morning of November 10, 1954, being the same date the instant cases were set for trial before Judge Hoffman. Eben appeared before Judge Fisher that morning and informed him of his commitment in the federal court. Judge Fisher insisted, however, that the case in his court would go to trial immediately and assigned the case to Judge Flanders for trial. Thereupon, Eben explained the situation to Judge Flanders and the two of them returned to Judge Fisher's chambers to ascertain if the Spitzer case could not be postponed. Judge Fisher would not agree and ordered that the case go to trial immediately, and it did. The Spitzer trial in which Eben was engaged in the state court lasted as long as the trial of the instant cases.

Eben, when he ascertained that Judge Fisher was adamant in his refusal to postpone the trial in the state court, called an associate, Frank E. McDonald, and requested him to inform Judge Hoffman of his situation. Upon being informed, Judge Hoffman stated, "Now, he is held for trial here regardless of what happens over there." McDonald advised the court had he had only been associated with Eben for a short time, was not familiar with the cases and had had no experience in the trial of such cases in a federal court. Thereupon, the government entered a motion under Rule 17(c), Fed.Rules Crim.Proc. 18 U.S.C.A., requesting the corporate defendants to pro-

duce their books and records, which was allowed. Upon McDonald's attempt to object to this motion, the court stated, "No, I don't think you may speak. You say you do not represent these defendants." Upon McDonald's inquiry if the court proposed to appoint a lawyer, the latter stated, "He has got a lawyer who is held here for trial, and in reckless disregard for the United States District Court, he left here when he was held for trial, or didn't even attend. He has a lawyer." Upon Koplin's inquiry if he was to be deprived of counsel, the court stated, "No, you are not. Your lawyer was given weeks—months, to get ready for this trial, sir, and we are going to try this case." The court suggested that McDonald file his appearance, which the latter declined to do, with the statement, "No, Judge, I am not qualified to attend at this man's trial under the circumstances." Thereupon, at the same session of court, the court appointed McDonald as attorney for Koplin and the corporate defendants but not for the defendant Steiner.

Koplin protested that he did not know McDonald, to which the court responded, "If you will permit me, sir, I want to be very fair with you. We are going to hold this trial until Friday morning. If at that time you don't like the Court's appointment of Mr. McDonald * * * we will let you bring in any lawyer of choice." This all happened on Wednesday, November 10, and the following day was Armistice Day, a holiday.) At the same time the court informed Koplin, "you are bound by what your lawyer does," and that he had appointed McDonald because he was an associate of Eben. Over Koplin's protest that he did not want McDonald and McDonald's protest that he could not adequately prepare the case for trial by Friday morning, the court stated, "You are going to trial now. You have got two days to get anybody else that you want. I don't care. * * * Mr. Eben has had an opportunity to be here. He has chosen to remain away. We will go ahead Friday at 10:00 o'clock." In the meantime and in the ab-

sence of counsel for any of the defendants, a motion by the government that the cases be consolidated for trial was allowed, and in the absence of any counsel for Steiner, court appointed or otherwise, the court allowed a motion by the government to vacate a previous order by which her case had been severed.

On Friday, November 12, there was filed on behalf of Koplin a motion for continuance supported by his affidavit and those of Eben and McDonald. The affidavits in great detail stated the reasons why Koplin could not safely proceed to trial in the absence of his counsel Eben, as well as the reasons why Eben was not able to be present. We need not recite these reasons in detail as their substance has previously been stated. It may be pertinent to note that the affidavits disclose that any delay in the prosecution of these cases was not the fault of the defendants; in fact, of the many continuances which had been allowed in the course of the proceedings, all were on motion of the government or on the court's own motion, other than the instant motion by the defendants and that of October 28. The affidavits also alleged that the court, on February 16, 1954, had denied defendants' motion for a Bill of Particulars but, notwithstanding this denial, the government, on November 2, 1954, served on defendants' counsel copies of what purported to be three Bills of Particulars. It was indicated thereby that the charges in the indictments were based on unrecorded sales of $184,091.87, constructive dividends of $140,955.98, and unidentified bank deposits of $62,623.95. The affidavits also alleged that hundreds, and perhaps thousands, of transactions were involved, which even the most skilled could not understand without long and intensive study of the documents and business methods involved, which no person could in such a brief time understand so as to provide defendants with the defense to which they were entitled. There was attached to the motion a photograph of defendants' books and records which had been produced at the direction of the court, showing over twenty-five filing cabinets filled with records, over ten volumes of books containing thousands of pages, and miscellaneous boxes containing other records.

Koplin also filed a motion for the disqualification of Judge Hoffman, pursuant to Title 28 U.S.C.A. § 144, on the grounds that he had a personal bias and prejudice against Koplin. This motion was supported by a long and detailed affidavit of Koplin and by a certificate of Eben that the application was made in good faith.

The court denied the motion for continuance without reading the motion or the affidavits, so it is here asserted. At any rate, the following colloquy took place between McDonald and the court:

"Mr. McDonald: I have some motions which I will hold until it is called again.

"The Court: Present them now.

"Mr. McDonald: Judge, the first is an affidavit in support of the motion for a continuance.

"The Court: You went all the way to the Court of Appeals, and you move for a continuance in this case, Mr. McDonald?

"Mr. McDonald: Yes, I do, your Honor.

"The Court: I will deny the motion."

The motion for disqualification was also summarily denied on the ground that both the motion and affidavit were inadequate.

While Eben had been employed as counsel for Steiner as well as for the other defendants, for some reason not entirely clear no motion was made on her behalf for a continuance. Presumably this was for the reason that she had previously been granted a severance, which order, as already noted, was vacated on the day the case was called for trial. Unless it can be said that she was represented by McDonald as court-appointed counsel, and about this there is great uncertainty, she was tried without counsel. One thing is certain—McDonald was not

appointed for Steiner by any order of court. As already noted, he was appointed only for the other defendants on November 10. On November 12, when the case was called for trial, Steiner evidently thought that McDonald had been appointed for her and protested that she did not want him as her counsel for the reason that he was not qualified to try the case. She specifically informed the court that Mr. Eben was handling her case and she wanted him as her attorney, to which the court responded, "All right."

The trial thus commenced and proceeded on various court days until the afternoon of November 23, 1954, at which time the government was nearing the conclusion of its case, when McDonald raised the question as to whether he represented Steiner, as is evidenced by the following colloquy:

"Mr. McDonald: Judge, I have had an opportunity to look at the record since the trial commenced, and the record is not clear to me. Do I represent all four defendants?

"The Court: What did you say?

"Mr. McDonald: Do I represent all four defendants?

"The Court: Don't you think so?

"Mr. McDonald: As I say, the record is not clear. I tried to do my best as to both.

"The Court: * * * My answer to you is that you do represent all four defendants. * * *

"The Court: I think you have been engaged in defending them during this trial. * * *

"The Court: Apropos, Mr. McDonald, in answering about whom you represent, you know defendants who designate a lawyer and authorize them to appear for them * * * are responsible for the conduct of lawyers just as the lawyers, conversely, are responsible for the conduct of the clients, of what the clients may do. In other words, defendants may not, under the law, employ lawyers and then not be responsible for what the lawyers do in the conduct of a case."

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." This amendment "withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." Johnson v. Zerbst, 304 U.S. 458, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461. "It is the solemn duty of a federal judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right at every stage of the proceedings." Von Moltke v. Gillies, 332 U.S. 708, 722, 68 S.Ct. 316, 322, 92 L.Ed. 309. "The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client." Von Moltke v. Gillies, supra, 332 U.S. at page 725, 68 S.Ct. at page 324. "He [the defendant] requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158. "That Amendment [the Fourteenth] is violated also when a defendant is forced by a state to trial in such a way as to deprive him of the effective assistance of counsel." Hawk v. Olson, 326 U.S. 271, 276, 66 S.Ct. 116, 119, 90 L.Ed. 61. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680.

The principles announced in these cases as well as in many others which could be cited leave no escape from the conclusion that the defendants were deprived of their right to the effective assistance of counsel as guaranteed by the

Sixth Amendment. This is so even though all that took place prior to November 10, 1954 be disregarded. On that date Koplin was in court, and without any fault on his part so far as is disclosed, without counsel. His employed counsel, an experienced trial lawyer who had at least partially prepared the case for trial, was engaged in the Circuit Court of Cook County in a case which was also important. There is nothing in the record to indicate but that Eben's absence from the federal court on that date was in good faith. With two important cases set for trial at the same time, he was required to take the risk of incurring the wrath of either Judge Hoffman in the federal court or Judge Fisher in the state court. The government makes the specious argument that it was Eben's duty to respond in the court of Judge Hoffman because the latter appeared on the bench at 10:00 a. m. and the cases were called at 10:09 a. m., while the case in the state court was set before Judge Fisher for 10:15 a. m. and was not called until between 10:25 and 10:30 a. m.

Even though we indulge in the unwarranted assumption that Eben was derelict in his duty in failing to respond to the call in Judge Hoffman's court rather than in that of Judge Fisher, it does not negate the fact that Koplin was forced to trial in a manner and under circumstances that deprived him of the constitutional right to the effective assistance of counsel. More than that, in the absence of any counsel, court appointed or otherwise, the court allowed the government's motion directing Koplin to produce, which he did, a great mass of files and documents for government inspection, and also allowed the government's motion that the cases be consolidated for trial.

The argument that Koplin's constitutional right was preserved by the appointment of McDonald is without substance. It is now claimed by the government that he was an able and experienced attorney because at one time he had served as an assistant in the States Attorney's office of Cook County. Even so, he had had little if any experience in the trial of cases in the federal courts and, although an assistant of Eben's, had taken no part in the preparation of the cases for trial. No wonder both he and Koplin protested vigorously against being forced into trial under such circumstances. The fact that McDonald was given forty-eight hours (including Armistice Day) to prepare for trial, taking into consideration the character and complexity of the cases, reduces his appointment to nothing more than a mere formality. It is hardly conceivable that a lawyer with the wisdom of Solomon could have been prepared to conduct a defense properly under such circumstances.

As already stated, Steiner was not present in court on November 10, but made her appearance on November 12, depending on Eben as her employed counsel. Based on the facts previously related, we think there was even a more flagrant violation of her constitutional right to the effective assistance of counsel; in fact, as already shown, there is doubt if she had counsel at any stage of the trial. Certainly McDonald was never formally appointed for her. The most that can be said is that he appeared in some instances to be acting on her behalf. Even so, any representation by McDonald was in face of her protest and McDonald's frequent warning to the court that he was not prepared to represent either Koplin or Steiner.

It is evident that the trial court had his mind made up to place the defendants on trial, right now, irrespective of whether they were represented by counsel, and this on the fallacious premise that the cases are old and must be disposed of immediately. The desire or ambition to dispose promptly of the business of the courts is highly commendable, but it cannot be realized at the expense of the fundamental rights of parties to litigation. More than that, it should be kept in mind, particularly in criminal cases, that the commitment of a defendant to the penitentiary on a record such as we have here would be meaningless. At any rate, we have every reason to be-

lieve that defendants' discharge would be readily obtainable on their application for a writ of habeas corpus. As was stated in Powell v. Alabama, 287 U.S. 45, 59, 53 S.Ct. 55, 60, "The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob."

We conclude with the Biblical admonition, " *   *   * the race is not to the swift, nor the battle to the strong *   *   *." (Ecclesiastes 9:11.)

The judgments are reversed and remanded for a new trial.