Claude **WILLIAMS,** Petitioner-Appellant,

v.

**UNITED STATES** of America, Respondent-Appellee.

No. 14342.

United States Court of Appeals Seventh Circuit.

May 12, 1964.

Claude Williams, No. 46151, Clarence F. Wittenstrom, Jr., Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Raymond F. Zvetina, Asst. U. S. Atty., Frank E. McDonald, Chicago, Ill., U. S. Atty., John Peter Lulinski, John Powers Crowley, Asst. U. S. Attys., of counsel, for appellee.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Claude Williams, petitioner, has appealed from an order of the district court entered July 12, 1963, following proceedings in that court pursuant to our reversal and remandment, 7 Cir., 310 F.2d 696 (1962).[1]

Upon remand, the district court entered findings of fact and conclusions of law and ordered that petitioner's motion in the nature of a writ of error *coram nobis* to vacate and set aside judgment of conviction be denied. It is that order from which petitioner has appealed.

Responding to a three count indictment charging violation of the federal narcotics statutes, petitioner was arraigned on July 13, 1955 after the court had appointed John Gannon, an experienced attorney of the Chicago bar, to defend him. A plea of not guilty was entered and the case was set for trial on September 12, 1955. Petitioner was in custody until August 12, 1955, when he was released on bail. He was not "contacted" by Mr. Gannon. According to petitioner, he was unable to "contact" his attorney "because he had lost" his card. On September 12, Mr. Gannon was granted leave to withdraw as counsel, because petitioner expressed a desire to hire his own attorney. One reason stated by petitioner for the change was that Mr. Gannon advised him to plead guilty. The court gave petitioner two days to get a lawyer. The following day petitioner was referred by the Chicago Bar Association to attorney Melvin B. Lewis, whom he employed after a conference. On the trial date attorney Lewis sent an associate attorney, Jack Rosen, into court and he explained that Mr. Lewis was trying a murder case in DuPage County and requested a 30 day continuance. The court, according to petitioner, pressed Mr. Rosen to trial, although he was "an inexperienced three and one-half month lawyer who was given only four hours to prepare for trial".

After a four-hour recess, the trial began at 2:30 P.M. on September 14th. After a jury was impaneled, Mr. Rosen and government counsel orally agreed to continue the trial with less than twelve jurors in the event of the illness of not

---

1. We there held that, although petitioner sought relief under 28 U.S.C.A. § 2255, which was not available in the circumstances of the case, we would treat his action as an application for a writ of error *coram nobis* under 28 U.S.C.A. § 1651 (a).

to exceed two members of the jury. This stipulation was not reduced to writing. Later, during the trial, one juror became ill and was excused. The court, referring to the stipulation, proceeded to a verdict of guilty, with the remaining eleven.

Petitioner's brief in this court now emphasizes that when one juror was excused and the trial proceeded "both counsel did *not again* agree that the trial should proceed with only 11 jurors". (Boldface supplied.)

Although petitioner was in the courtroom at the time counsel made the oral stipulation, he contends that he was not in fact aware thereof and never consented to it. On this point the court made the following finding and conclusion:

> "The court recalls that at all times during the proceedings at the trial, including the time at which counsel entered into the stipulation concerning the jurors, petitioner paid close attention and followed each development. It is the considered opinion of this court that petitioner heard the statements made concerning the jurors and was cognizant of the stipulation and its import."

The jury found petitioner guilty as charged in counts two and three of the indictment, and not guilty as to count one. The district court imposed a sentence of two years on count two and five years on count three, to run consecutively.

After petitioner fully served his two-year sentence on count two of the indictment, he was released in 1957 and began serving a five-year probationary period on count three. In 1960 he was convicted in an Illinois state court for the unlawful sale of narcotics and sentenced as a second offender to the penitentiary for the period of his natural life. He was then by the district court found guilty of violating his federal probation and sentenced to serve 10 years[2] concurrently with his state sentence.

**1.** In this court, petitioner's counsel takes the position that he had an unqualified constitutional right to be defended by counsel of his own choice and not by some other counsel arbitrarily designated by the court to help him. He relies principally upon Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954), which cited Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937) and Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The holdings in these three cases will be considered together.

In Powell, in a capital case several illiterate defendants were brought to trial upon a rape charge and it was not until the very morning of the trial that any step was taken to appoint counsel for them, except that the trial court had "appointed all the members of the bar" for the limited "purpose of arraigning the defendants." Then, within a few moments after counsel for the first time charged with any degree of responsibility began representing them, a trial was held and they were found guilty and sentenced to death.

In Palko v. Connecticut, 302 U.S. at 327, 58 S.Ct. 149, 82 L.Ed. 288 the court said that the defendants in Powell were condemned unlawfully when in truth, though not in form, they were refused the aid of counsel.

In Chandler, defendant Chandler sought release on a writ of habeas corpus from a life sentence as an habitual criminal. He had appeared in court for trial on an indictment charging housebreaking and larceny, intending to plead guilty. However, at that time the trial judge informed him that he would also be tried as an habitual criminal, which, if he were convicted thereof, carried a mandatory sentence of life imprisonment with no possibility of parole. Chandler asked for a continuance to employ counsel on that new accusation. His request was denied, a jury was impaneled and the case proceeded immediately to trial. By a show of hands, the jury found him

---

2. Upon our previous remand, the district court reduced this ten-year sentence to five years.

guilty on all charges, without leaving the jury box, a proceeding which consumed between five to ten minutes.

At the hearing on the habeas corpus proceeding, the prosecuting attorney testified that Chandler had not been represented by counsel and had not been given a pretrial notice of the habitual criminal accusation, although he admitted that Chandler said he wanted the case put off as he was being tried as an habitual criminal in addition to house-breaking and larceny.

The Supreme Court held that he was entitled to a jury trial on the habitual criminal charge and held that he did not waive counsel on that accusation. It further held that, by denying him an opportunity to obtain counsel on that charge, his constitutional rights were violated.

We consider it significant that, in contrast to the obvious deprivation of the effective legal representation by a lawyer, existing in Powell and Chandler, the record in the case before us reveals that petitioner was represented at the trial by a lawyer, duly admitted to the Illinois bar, sent into court by attorney Lewis, who was employed by petitioner, after attorney Gannon, his prior counsel, had advised him to plead guilty. Not only was Rosen sufficiently equipped as a lawyer to be admitted to the bar of Illinois, but there was no act of commission or omission by him during the trial which it is charged by petitioner's present counsel was inept, incompetent or injurious to the defense of petitioner. His brief in this court expressly states that no attack is made on the competency of Rosen because of mistakes committed during the trial, but rather on lack of capacity.

We must not lose sight of the fact that the real issue here is whether petitioner was accorded a trial in which attorney Rosen properly and competently represented him. If the answer is in the affirmative, we are not concerned with the charge of Rosen's lack of capacity. The mere fact that the defense was

unsuccessful is more properly to be treated as consistent with a conviction despite a vigorous and skillful effort by defense counsel. Moreover, we are impressed with the fact that the presiding judge, who witnessed the entire proceedings in court, was in a favorable position to judge as to the effectiveness of the service rendered by attorney Rosen at the trial. We have confidence that he would not have entered the judgment of conviction if it appeared that Rosen had given an inadequate defense to petitioner.

We hold that petitioner was properly represented at the trial because we find that there is no showing that he was denied the effective assistance of counsel.

■ 2. Additionally, counsel argues that petitioner was denied his right to trial by twelve jurors, "because the oral stipulation was not raised and again agreed to by both counsel and by Claude Williams at the time when the juror actually took sick and had to withdraw". We conclude from examining the record that petitioner was present when the oral stipulation was made and that he was also present when the agreement in regard to proceedings with less than twelve jurors was put into effect. In addition we hold that the record shows that petitioner was satisfied when the court proceeded with eleven jurors.

Having represented petitioner upon the hearing of his prior appeal to this court, in No. 13677, Clarence F. Wittenstrom, Jr., of the Illinois bar, continued to serve in the same capacity during the pendency of this appeal. He has rendered diligent and able service, for which we express our thanks.

For the reasons set forth, we affirm the order from which this appeal has been taken.

Order affirmed.

KILEY, Circuit Judge (dissenting).

I dissent. In my opinion the district court should have ordered a new trial of the federal narcotics case because petitioner was there denied right of counsel

of his own choosing in violation of the Sixth Amendment.

Petitioner was ordered to employ counsel in two days. He did so. His counsel was engaged in a murder case in another county the day after petitioner employed him when the case was called for trial. The court denied a continuance, appointed petitioner's counsel's assistant, who had but 3½ months experience, to represent petitioner, and forced him to trial with but four hours preparation. Petitioner was convicted, and this conviction was the basis upon which he was subsequently sentenced to life imprisonment in a state court narcotics trial as a second offender.

This is not a Powell, nor a Chandler, nor a Palko case. But other federal court decisions, involving state as well as federal trials, persuade me that petitioner's Sixth Amendment right was violated at his trial for the federal offense.

The denial of a continuance for his employed counsel was unfair, Gomez v. Heard, 218 F.Supp. 228 (S.D.Texas, 1962), aff'd per curiam, 321 F.2d 88 (5th Cir. 1963), and this unfairness was aggravated by the court's forcing petitioner to trial without his employed counsel, instead of giving him further reasonable time to employ a substitute. United States v. Johnston, 318 F.2d 288 (6th Cir. 1963). This procedure was "fundamental unfairness." Argo v. Wiman, 209 F.Supp. 299 (M.D.Ala., 1962), affirmed, 308 F.2d 674 (5th Cir.) cert. denied, 371 U.S. 933, 83 S.Ct. 306, 9 L.Ed.2d 270. It is of no relevance that substitute counsel has not been shown to have been incompetent or inept. United States v. Johnston, 318 F.2d 288, 291 (6th Cir. 1963). This court in United States v. Koplin, 227 F.2d 80, 85 (7th Cir. 1955), where the facts differ from those before us, stated, among other rules of law, the following: "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

The district court when petitioner was convicted was not expected to foresee the subsequent state violation and conviction. But that unforeseeable event discloses the magnitude of the Sixth Amendment violation and underscores the care required of federal courts to protect constitutional rights, in every case.

The decisions in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and the more recent Second Circuit opinion in United States ex rel. Durocher v. La Vallee, 330 F.2d 303 (2d Cir. March 26, 1964), are, of course, not applicable to the precise point in the dissent. A reading of them, however, indicates the climate in which complaints about violations of Sixth Amendment rights are to be tested.