UNITED STATES of America ex rel.
Clinton BURNETT,
Petitioner-Appellant,

v.

PEOPLE OF the STATE OF ILLINOIS,
Respondent-Appellee.

No. 78–2296.

United States Court of Appeals,
Seventh Circuit.

April 22, 1980.

Michael J. Shepard, Chicago, Ill., for petitioner-appellant.

Neal B. Goodfriend, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

* Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

Before CUMMINGS and PELL, Circuit Judges, and GRANT, Senior District Judge.*

PELL, Circuit Judge.

The petitioner appeals from the judgment of the district court dismissing his petition under 28 U.S.C. § 2254 for relief from his 1973 Illinois conviction. In the district court the petitioner set forth several grounds for relief, three of which are the principal subjects of his appeal. According to the petitioner, he was denied due process by his trial before an eleven-member jury, by the use of perjured testimony, and by the prosecutor's prejudicial remarks in the presence of the jury. At the minimum, the petitioner requests that this court remand this action for a hearing on his claims pursuant to *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). We shall summarize the facts when necessary for our discussion of the issues.

## I.

■ We turn first to the petitioner's argument that his trial before an eleven-member jury[1] violated his Fourteenth Amendment right to due process. Of course, the petitioner is not entitled to a twelve-member jury in a state criminal trial as a matter of federal constitutional law. *Williams v. Florida*, 399 U.S. 78, 86, 90 S.Ct. 1893, 1898, 26 L.Ed.2d 446 (1970). In Illinois, however, the right to a twelve-member jury is guaranteed by the constitution, Ill.Const.1970, art. 1, § 13; *People v. Ward*, 32 Ill.2d 253, 204 N.E.2d 741 (1965), *cert. denied*, 384 U.S. 1022, 86 S.Ct. 1947, 16 L.Ed.2d 1026 (1966), and by statute, Ill.Rev. Stat. ch. 38, § 115–4(b). The petitioner alleged at his sentencing hearing in the state court, as he does here, that his attorney stipulated to a jury of less than twelve members without his consent and not in his

1. The petitioner's trial commenced with a twelve-member jury. During trial, however, a juror became ill and was excused from further

presence,[2] and now argues that this procedure violated Ill.Rev.Stat. ch. 38, § 103–6, which requires that the right to a trial by jury be "understandingly waived by defendant in open court." The state court denied his post-trial motion. On appeal from his conviction, *People v. Burnett*, 35 Ill.App.3d 109, 341 N.E.2d 86 (1st Dist. 1975), the court held that the petitioner was not entitled to a hearing on his allegations, because the trial record was sufficient to show a waiver of the petitioner's rights under section 103–6 and the rule of *People v. Murrell*, 60 Ill.2d 287, 326 N.E.2d 762 (1975).[3] In the federal district court the petitioner again alleged that he did not consent to be tried by the eleven-member jury and that he was thus arbitrarily denied a state-created right in violation of the Fourteenth Amendment. According to the petitioner, these allegations state a claim for relief under 28 U.S.C. § 2254, and he asks us to remand this cause for a hearing in accordance with *Townsend v. Sain* to determine whether he consented to the trial procedures at issue.

We disagree with the petitioner's premise that "[t]he denial of petitioner's state-created right to a 12-person jury in this case is more than a sufficient basis for relief under the Fourteenth Amendment." The petitioner has the burden of alleging *more than an error of judgment resulting in a denial of some state right, see United States ex rel. Curtis v. Illinois*, 521 F.2d 717, 719 (7th Cir. 1975), *cert. denied*, 423 U.S. 1023, 96 S.Ct. 465, 46 L.Ed.2d 397; the denial of the right must be the result of arbitrary action. Properly framed, then, the issue before us is whether the state court determination, based on the trial record, that the petitioner waived his state

right to twelve jurors was without an adequate determining principle, unreasoned, *see United States v. Carmack*, 329 U.S. 230, 243–44 n. 14, 67 S.Ct. 252, 258–259, 91 L.Ed. 209 (1946), or had so little basis in law and fact as to constitute a denial of due process. *See United States ex rel. Swimley v. Nesbitt*, 608 F.2d 1130 (7th Cir. 1979); *United States ex rel. Sampson v. Brewer*, 593 F.2d 798 (7th Cir. 1979), *cert. denied*, 416 U.S. 994, 94 S.Ct. 2408, 40 L.Ed.2d 773 (1974); *United States ex rel. Smith v. Twomey*, 486 F.2d 736 (7th Cir. 1973), *cert. denied*, 416 U.S. 994, 94 S.Ct. 2408, 40 L.Ed.2d 773 (1974); *United States ex rel. Walker v. Twomey*, 484 F.2d 874 (7th Cir. 1973).

The first subject of examination for arbitrariness is the legal standard applied by the state court for determining waiver. The Illinois Appellate Court expressly applied the waiver standard of section 103–6. *People v. Burnett, supra*, 341 N.E.2d at 91. According to the appellate court, the rule of *People v. Murrell, supra*, sets forth what constitutes a knowing and voluntary waiver of the right to a twelve-member jury. In *Murrell* the Illinois Supreme Court held that "[a] defendant who permits his attorney, in his presence and without objection, to waive his right to a jury trial is deemed to have acquiesced in, and is bound by, his attorney's action." 326 N.E.2d at 764. The appellate court held that the facts of this case fit squarely into the *Murrell* rule and held that the right was waived.[4] The petitioner's primary objection to the ruling of the state appellate court is its failure to require an affirmative waiver of this right by the petitioner on the record. In support of this position, the petitioner cites two Illinois Appellate Court decisions,

---

service. The verdict was returned by an eleven-member jury.

**2.** The petitioner made the following statement to the trial court:

I asked to be tried by a jury of twelve jurors. I did not agree in any way to be tried by a jury of less than twelve jurors, and this has been my complaint during the time that the court stated that the absent juror had taken sick—and this hasn't come before the court. I did not agree.

This statement was the first indication in the record of the petitioner's unhappiness with the stipulation.

**3.** The *petitioner also unsuccessfully sought post-conviction relief in the state court on this ground.

**4.** We shall discuss the appellate court's application of the standard to this record *infra*.

*People v. Quinn,* 46 Ill.App.3d 579, 4 Ill.Dec. 846, 360 N.E.2d 1221 (4th Dist. 1977); and *People v. Rosen,* 128 Ill.App.2d 82, 261 N.E.2d 488 (5th Dist. 1970); for the proposition that the *Murrell* standard for inferring waiver from a defendant's silence is not applicable if there is prejudice or lack of consent. This argument merely suggests, however, that the appellate court misinterpreted the Illinois Supreme Court authority. Errors in the interpretation of state authority are for the state supreme court to correct. This court will not take the extraordinarily intrusive action of setting aside a state criminal conviction in the guise of due process review, simply because we disagree with the state court's interpretation of state law.[5] *See Wainwright v. Stone,* 414 U.S. 21, 23–24, 94 S.Ct. 190, 192–193, 38 L.Ed.2d 179 (1973); *United States ex rel. Waters v. Bensinger,* 507 F.2d 103, 104 (7th Cir. 1974). Furthermore, the circumstances of this case in no way indicate that the Illinois courts arbitrarily or discriminatorily misread the Illinois law of waiver for the purpose of sustaining the petitioner's conviction. *Cf. Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

We now turn to a determination whether the inference of waiver from the petitioner's inaction, as dictated by the appellate court's reading of the *Murrell* rule, was so arbitrary that it constituted a violation of due process. The petitioner directs our attention to the waiver rules of other jurisdictions for the proposition that the better rule entitles a criminal defendant to be informed of his right to a twelve-member jury and to have his waiver appear expressly on the record. Perhaps this rule is preferable as a matter of policy, but the federal constitution does not for this reason mandate such a

waiver rule for this state right. *But see Walker v. State,* 578 P.2d 1388 (Alaska 1978). The inference of waiver from a defendant's silence does not "render meaningless" the Illinois requirement of understanding waiver. Traditionally, the defense attorney has been considered the defendant's mouthpiece and therefore able to speak on behalf of his client. In fact, for this reason, this court has inferred the waiver of the federal right to a twelve-member jury, *see* Fed.R.Crim.P. 23(b), from the stipulation of defense counsel in the presence of the defendant and the defendant's silence. *United State v. Pacente,* 503 F.2d 543, 551–52 (7th Cir.1974) (en banc), *cert. denied,* 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642, *Williams v. United States,* 332 F.2d 36, 39 (7th Cir.1964), *cert. denied,* 379 U.S. 976, 85 S.Ct. 672, 13 L.Ed.2d 566 (1965). The Fourteenth Amendment requires no more of the states.

Having found no constitutional defect in the formulation or substance of the waiver rule at issue here, we must now determine whether the Illinois court acted arbitrarily in applying the waiver rule on the basis of the trial record, despite the petitioner's request in that court for a remand to determine whether he disagreed with his attorney's stipulation to abide by the verdict of a jury of less than twelve.

The state trial transcript shows the following to have occurred at the petitioner's trial. During the selection of the jury, counsel for the prosecution and the defense orally stipulated that "in the event one or more jurors becomes unable to continue carrying out the responsibility as a juror, then both counsel stipulate that they will accept and abide by a verdict rendered by the remaining jurors." The trial court judge read this stipulation in open court. The transcript contains no express mention

---

5. Furthermore, we are not convinced that the appellate court's interpretation of the law of waiver is incorrect. In *Quinn* the appellate court expressly reserved decision on the necessity of an affirmative waiver requirement for a twelve-member jury. 360 N.E.2d at 1224. In *Rosen* the defendant was not represented by counsel and had no jury at all, thus bringing into question the waiver of federal constitutional rights. 128 Ill.App.2d at 85, 261 N.E.2d 488 (citing *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). *See United States ex rel. Gentry v. Illinois,* 586 F.2d 1142, 1144–45 (7th Cir. 1978). Indeed, the petitioner concedes in his brief that "no Illinois court has faced this question on similar facts."

of the defendant's presence at the time the court made this statement, nor did the trial court judge question the petitioner about the agreement. During the trial, one of the jurors became ill and was dismissed without objection from counsel. Again the transcript contains no express mention of the petitioner's presence at the time of the dismissal, nor did the trial court judge question the petitioner. At the end of the trial, the eleven-member jury returned a guilty verdict.

We see no arbitrariness in the state court's determination on the basis of this record and without a remand for further hearings that a waiver occurred. Of course, the record does not reflect the defendant's presence at the very moment of the stipulation or the very moment of the dismissal of the juror, but it provides a basis for the court's finding of waiver sufficient to shield its decision from the petitioner's charge of arbitrariness.[6] *See United States ex rel. Walker v. Twomey, supra.* The petitioner made no in-court objection to the eleven-member jury until his trial was over and the guilty verdict returned. Thus, the only question before the Illinois Appellate Court was the requirement of the *Murrell* decision that the defendant be present when the stipulation is made. We have looked at the record and think that it leaves no doubt that the petitioner was present in court on both the day of the stipulation and the day of the dismissal.

We see no reason for departing from a realistic appraisal of the state court record and from such an examination we have no doubt that the petitioner was present in open court on both the day of the stipulation and the day of the dismissal. The transcript very carefully documents all deviations from the normal procedure of a court of record showing when proceedings occurred in the presence of the jury and in its absence, when a side bar conference occurred and what was said, or if a conference occurred which was out of the presence of the reporter, that fact was indicated. At the beginning of the proceedings the presence of the defendant was recorded. Indeed, on the first day of the trial, proceedings were delayed while it was being determined why the defendant had not been brought to the court room. A lapse of time was indicated after which the judge addressed the prospective jurors and identified the counsel and the defendant and had all of them successively stand up on identification.

It is not surprising that the record does not explicitly state at page after page that the defendant was still in the court room. His presence there having been established, the only reason for a further transcript reference to his presence would have been if that status no longer existed. We certainly do not require official reporters of court proceedings to engage in elaborating on or repeating the obvious. When the stipulation was announced by the judge in the open court, the record made it clear that it was not in the presence of the jury. We decline to believe that the absence of the defendant, if that had been a fact, would not have been similarly noted. Likewise, the dismissal of the juror occurred in open court with the judge discussing at some length the nature of the illness preventing the juror from attending and then announcing that the trial would proceed with eleven jurors. This was followed by an inquiry as to whether there were any questions. Counsel for the defense indicated there were none upon which the judge immediately called in the jury and the trial continued. As a further example of the meticulous recordation of the proceedings which occurred, we note that the record reflected that at the beginning of the afternoon session on the day the juror was excused, the judge noted the absence of the defense counsel and indicated that the trial would not start until he arrived.

As mentioned previously herein, the record sets forth in detail all colloquies occur-

---

6. It is arguable that requiring a more complete record would result de facto in an affirmative waiver requirement.

ring both within and without the presence of the jury unless not in the presence of the reporter, and, if that occurred, it was so specified. Indeed, in one instance when a question arose as to the right of the state to bring in a previously unidentified witness, the discussion of the motion, although occurring in the judge's chambers, was fully reported. This is mentioned only to show the complete recording of all that transpired and that the crucial events here under consideration of necessity were in open court in the presence of the defendant.

We further find support for our conclusion by an examination of the artfully drawn post conviction petition filed in the state court some three years after trial. We note and comment on the allegations therein bearing on the presence of the defendant.

(1) "[Petitioner] should not be bound by defense counsel's stipulation, made outside petitioner's presence." We, of course, do not know whether the attorneys may have agreed in the corridor or elsewhere upon the stipulation. What is significant is that it was the judge who announced in open court the terms of the stipulation. In his post conviction petition, the petitioner did not deny hearing this.

(2) ". . . where petitioner, upon discovery of same, vigorously objected on the record." The defendant made no objection, vigorous or otherwise, until the time of sentencing when, of course, he knew that he had been found guilty.

(3) "The record does not show that petitioner Burnett was present at the time the stipulation was entered into." Here, if he is referring to the time the attorney may have agreed upon the matter, the record does not show his presence, but the record, as we have previously demonstrated, does convincingly demonstrate that he, of necessity, was present both at the time the stipulation was announced in open court by the judge and at the time the juror was excused from further duty.

(4) "Subsequently, a juror was dismissed and counsel again renewed the stipulation, again outside of the recorded presence of petitioner Burnett." Again, significantly, he does not say that the dismissal pursuant to the stipulation was outside his presence, merely that it was outside of his "recorded presence."

Indeed, even in his federal habeas petition the defendant does not deny having been in open court when the judge announced the terms of the stipulation and when the judge excused the juror. Stating that "I was not in the courtroom," or even that "I did not hear that," could have been a simple matter. It is clear that the principal reliance is on his claim of not having agreed to the stipulation. As the Illinois Appellate Court held, however, this is not sufficient under Illinois law. We do not think that the state refusal to remand for a consideration of any of the grounds for doubt named in the petitioner's brief before this court constituted an arbitrary application of the Illinois waiver rule.

Because we hold that the formulation, substance, and application of the waiver rule did not result in the arbitrary denial of the petitioner's state right to a twelve-member jury, a remand for further hearings on the petitioner's allegations under *Townsend v. Sain* is unnecessary.

## II.

We turn next to the petitioner's claim that the State knowingly used perjured evidence at his trial in violation of his right to due process. To understand the basis of the petitioner's claim, some factual background is necessary. The petitioner was charged with murder, and his defense at trial was self-defense. There was no dispute at trial that the victim, Steve Loston, died of a knife wound inflicted by the petitioner. The fight occurred at the Chicago Housing Authority project where both the victim and the petitioner lived. The eyewitnesses agreed that Loston jumped on top of the petitioner and remained on top of the petitioner throughout the fight. The eyewitnesses also agreed that Loston was hitting the petitioner. Two of the eyewitnesses, Elmer "Sue" Loyd, Loston's girlfriend, and

Robert "Foley" Spurlock, Loston's friend, testified for the prosecution. Albernecia Cox and her mother Joan Walker, neighbors of both the petitioner and Loston, testified for the defense. The testimony of the prosecution eyewitnesses at trial was that the petitioner was holding a knife before the scuffle began. On the cross-examination of "Sue" Loyd, however, the defense confronted the witness with her testimony at the grand jury hearing. The transcript shows the following exchange:

\* \* \* \* \* \*

Q. Mrs. Loyd, do you remember giving this answer to a question asked of you by the Assistant State's Attorney at the hearing before the grand jury on August 30th, 1972?

"Oh, then I heard Steve say one thing. When he walked around he told Foley, 'Man, I told you to reach me my knife,' and Foley said, 'What knife,' and Steve fell. Then he told me to say he didn't say that and I called the Police and I didn't hear any more."

Do you remember that?

A. No.

\* \* \* \* \* \*

The defense eyewitnesses testified that Loston, not the petitioner, had the knife before the scuffle began.

According to the petitioner's allegations, the testimony of "Sue" Loyd that the petitioner had the knife at the beginning of the fight was perjured. It is this testimony that he raises as a basis for relief under section 2254. Because the allegations of knowing use of perjury are not sufficient, even under the liberal pleading rules applicable to pro se litigants, this claim for relief must fail.

[7] It has long been the rule in this circuit, as well as others, that "the introduction of perjured testimony without more does not violate the constitutional rights of the accused. It is the *knowing* and *inten-*

tional use of such testimony by the prosecuting authorities that is a denial of due process of law." *United States ex rel. Williams v. Walker,* 535 F.2d 383, 386–87 & n. 3 (7th Cir.1976) (*quoting United States v. Jakalski,* 237 F.2d 503, 504–05 (7th Cir. 1956), *cert. denied,* 353 U.S. 939, 77 S.Ct. 817, 1 L.Ed.2d 761 (1957)) (emphasis added). The petitioner's original allegations say only that certain testimony against him was perjured. No allegation of knowing use appears. Of course, the absence of such an allegation in the pleadings does not in itself warrant dismissal. Justice requires that pro se complaints be liberally construed. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). Dismissal is appropriate only after an examination of the record for any set of facts to support a claim of knowing use of perjury. *See United States ex rel. Curtis v. Illinois, supra* at 721.

First, the calling of a witness who had changed her testimony does not in itself create any inference that the prosecution knowingly elicited perjurious testimony. *United States v. Holladay,* 566 F.2d 1018, 1019 (5th Cir. 1978), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125. Contradictory testimony does not constitute perjury.[7] The petitioner, however, emphasizes the content of Loyd's testimony that Loston told her not to say anything as showing both a motive and willingness to lie about the knife. According to the petitioner, the use of this suspicious testimony alone raises an inference that the prosecutor knew the witness to be untruthful. We cannot say that these grounds for doubting the truth of Loyd's testimony create an inference that the prosecution was knowingly using perjury. The crux of the due process claim at issue here is deliberate deception, *see United States ex rel. Wilson v. Cannon,* 538 F.2d 1272, 1276–77 (7th Cir.1976), and because all of the evidence before us now was presented to the jury, the petitioner hardly

---

7. We have some doubt that the prior statements at issue are as contradictory—or as exculpatory—as the petitioner asserts. The grand jury testimony arguably indicates that Loston was unarmed both before and during the fight and therefore that the murder weapon did in fact belong to the petitioner.

raises a claim of deception, let alone an inference of deliberate misconduct. The prosecution was not obligated to prove the state's case only by unimpeachable testimony.[8] Because nothing in the record raises an inference of knowing use of perjury, and because the petitioner has made no additional allegations tending to show knowledge on the part of the prosecution, the district court properly dismissed this portion of the petition for failure to state a claim. *See United States ex rel. Curtis v. Illinois, supra* at 722.

### III.

We turn finally to the petitioner's charges of prosecutorial misconduct. The petitioner emphasizes one incident at the trial, when defense counsel said it "appeared" to him that the prosecutor was making prejudicial remarks during the testimony of the defense witness Albernecia Cox.[9] The defense attorney brought these statements to the attention of the trial court judge. The prosecutors did not admit to having made these statements but did argue the necessity that co-counsel confer during the trial. The prosecutors did deny intentionally making any remarks so as to be heard by the jury.

We agree with the district court that the incidents complained of were not sufficiently prejudicial to constitute a denial of due process. The defense counsel brought the comments to the attention of the trial court, and, in accordance with the request of defense counsel, the trial court warned the prosecutor that such comments were clearly improper and would be dealt with appropriately. The minimal prejudicial effect of these remarks in the context of the whole trial, *see Donnelly v. DeChristoforo*, 416 U.S. 637, 643–44, 94 S.Ct. 1868, 1871–1872, 40 L.Ed.2d 431 (1974), is shown most vividly by the conduct of the defense attorney, who did not even see fit to mention these incidents, which occurred on a Friday, until the following Monday. The defense did not request a mistrial, a cautionary jury instruction, or a determination whether any jurors heard the remarks. The trial court judge noted that he did not hear any of the comments and that it would therefore be impossible for the entire jury to have heard them. Any possible prejudice caused by these unintentional remarks was cured by the instruction, given twice to the jury, that the prosecutor's remarks were not evidence. *See id.* at 646–47, 94 S.Ct. at 1872–1873.

Similarly, none of the other incidents of prosecutorial conduct complained of in the petitioner's brief was so devastating to the fairness of the proceeding as to constitute a denial of due process. Accordingly the judgment of the district court is affirmed.

---

**8.** Citing *Imbler v. Craven*, 298 F.Supp. 795 (C.D.Cal.1969), *aff'd*, 424 F.2d 631 (9th Cir. 1970), *cert. denied*, 400 U.S. 865, 91 S.Ct. 100, 27 L.Ed.2d 104, the petitioner argues that the "reckless use of highly suspicious false testimony" entitles him to relief. The district court in *Imbler* granted relief upon a record that showed the prosecution elicited testimony from a witness who falsely claimed to have two college degrees and a substantial annual income. Although the prosecution did not actually know this testimony was false, it knew that the witness had been in a state mental hospital, had a history of felony convictions, and had been in prison only a year before he claimed to have been awarded his second college degree.

We fail to see any comparison between the facts in *Imbler* and those of the case before us.

First, the petitioner has alleged no basis for concluding that Loyd's testimony was false that was not presented to the jury at trial. Second, the eyewitness Spurlock and other circumstantial evidence corroborated Loyd's testimony at trial.

The petitioner's allegation of falsehood does not render Loyd's testimony false, and it hardly renders the prosecutor's submission of it reckless. Because the petitioner has not stated a claim under the *Imbler* standard, we need not decide whether *Imbler* correctly states the applicable law.

**9.** One of the alleged comments was, "She is well-coached." The other, apparently referring to a prior statement was, "She said that, she said that."