UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos Humberto
HERNANDEZ–BELTRAN,
Defendant–Appellant.

No. 88–2493
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1989.

Roland E. Dahlin, II, Federal Public Defender, Felix Recio, Michael Sokolow, Marjorie A. Meyers, Asst. Federal Public Defenders, Houston, Tex., for defendant-appellant.

Paula C. Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

## I. *Introduction*

Carlos Humberto Hernandez–Beltran (Defendant) was indicted on four counts: 1) conspiracy to possess heroin with the intent to distribute; 2) possession of one gram of heroin with intent to distribute; 3) possession of one ounce of heroin with intent to distribute, and 4) possession of 16 ounces of heroin with the intent to distribute. All of the substantive counts also charged the defendant with aiding and abetting the crimes. A jury convicted the defendant on all but the conspiracy charge. The court sentenced the defendant to three concurrent five-year sentences and a four-year special-parole term. The defendant raises two issues in this appeal. First, he contends that the evidence was insufficient to support his convictions. Second, he contends that the district court erred in concluding that a minimum four-year imprisonment was statutorily required.

## II. *The Facts*

The defendant's convictions arose from a series of drug transactions which began when Ricardo Varela (Varela) contacted Jose Munoz and informed Munoz that he had heroin for sale. Varela was unaware that Munoz was a confidential informant for the Drug Enforcement Administration (DEA). Munoz, Varela and co-defendant Mario Madera–Whijares (Madera) agreed that Varela would sell Munoz 25 ounces of heroin for $6,000 per ounce. Varela and Madera also agreed to meet Munoz' buyer DEA undercover agent Brogdan and supply the buyer with a sample. Varela and Madera then drove to Mexico to pick up the sample of heroin.

While Madera was in Mexico he ran into the defendant who offered to drive Madera to Texas. Madera agreed and the two men drove to the border. As they approached the border Madera told the defendant that he wished to walk across the border and would meet the defendant on the United States side. The defendant drove the vehicle across the border while Madera walked across carrying the one gram sample of heroin.

The defendant and Madera drove to Munoz' apartment where they met Munoz and Agent Brogdan outside the apartment. The defendant and Agent Brogdan remained outside in their respective vehicles while Madera and Munoz went inside. When the two men left the apartment Agent Brogdan saw Madera hand Munoz a piece of paper later found to contain .12 grams of heroin. Munoz gave the paper to Agent Brogdan. Madera, Munoz and Agent Brogdan then discussed the purchase of a test ounce and the full 25 ounce shipment. The defendant drove Madera to another apartment where Madera met with Varela while the defendant remained outside in the vehicle. The defendant then dropped Madera at Munoz' apartment and the defendant returned to Mexico.

Later that evening Madera and Munoz took one ounce of heroin to Brogdan's motel room and sold it to him for $5,000 cash. Madera returned to Mexico where he and Varela processed the remaining ounces of heroin in Varela's apartment. The defendant came into the apartment while this processing was being done. The next

morning Madera secreted heroin in the stereo speaker of his vehicle. After doing so he asked the defendant for help in replacing the screws. The two men then drove to Munoz' apartment in the United States. While en route into town Madera advised the defendant that what he was doing was not honest and that he should not get involved in similar "deals".

When Madera and the defendant arrived at Munoz' apartment the defendant carried the heroin into the apartment. Later the three men left for Agent Brogdan's motel with the defendant driving. Madera, believing they were being followed, directed the defendant to return to Munoz' apartment. When they returned Varela was waiting for them and they transferred the heroin to Varela's vehicle. Madera and Munoz then drove to Agent Brogdan's motel to deliver the heroin and the defendant left. Madera was arrested as he delivered the heroin to Agent Brogdan. Varela and the defendant were arrested near Hidalgo, Texas.

### III. *Analysis*

A. The sufficiency of the evidence.

The defendant asserts that the evidence was insufficient to support his convictions. In evaluating the sufficiency of the evidence, the reviewing court must consider the evidence in the light most favorable to the government with all reasonable inferences and credibility choices made in support of the jury's verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed.2d 680 (1942).

The defendant did not put on any evidence and requested a judgment of acquittal at the close of the government's case. Therefore, the standard of review is that found in *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983):

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt be-

yond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*See also United States v. Henry,* 849 F.2d 1534, 1536 (5th Cir.1988).

■ In order to sustain a conviction for possession of heroin with intent to distribute, the government must prove three elements: (1) knowing, (2) possession, (3) with specific intent to distribute. *United States v. Kaufman,* 858 F.2d 994, 1000 (5th Cir. 1988). The intent to distribute may be inferred from the possession of a large quantity of the drug. *Id.*

■ A conviction for aiding and abetting requires proof that the defendant aided and abetted in both the possession and distribution of the drug. *United States v. Natel,* 812 F.2d 937, 941 (5th Cir.1987). The government must prove that the defendant associated with the criminal venture and participated in an act with intent to further the venture. *United States v. Sandoval,* 847 F.2d 179, 184 (5th Cir.1988). Mere presence and association alone are insufficient to sustain a conviction for aiding and abetting; however, they are factors to be considered. *Natel,* 812 F.2d at 941. To determine whether the evidence was sufficient to support the defendant's convictions we must determine whether the government proved each of the elements of possession or aiding and abetting with respect to each substantive count. To do so we will analyze each conviction separately.

1. *Possession With Intent To Distribute 16 Ounces*

■ The evidence is clearly sufficient to sustain this count. The defendant accompanied Madera to Munoz' home. While in Mexico he had helped Madera replace the screws in the speaker cabinet, thereby concealing the package containing the heroin before they crossed the border and helped loosen the speaker screws and remove the package at Munoz' house. He entered the home and later went out and carried the heroin into the apartment.

Possession was clearly established. The jury was entitled to infer intent to distrib-

ute from the quantity of narcotics possessed. *Kaufman,* 858 F.2d at 1000. Knowledge was also sufficiently proved. Circumstantial evidence may be used to prove knowledge. *Id.; United States v. Phillips,* 496 F.2d 1395, 1397 (5th Cir.1974), *cert. denied,* 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975). The circumstances, including the hiding of a package in the speaker panel, were sufficient for the jury to infer knowledge. The evidence was, therefore, sufficient to support the defendant's conviction for possession with intent to distribute 16 ounces of heroin.

### 2. *Possession With Intent To Distribute One Gram*

■ Madera testified that he ran into the defendant after returning to Mexico to pick up a one gram sample of heroin. The defendant wished to go into town and offered to drive Madera to the United States. As they approached the border Madera told the defendant that he wished to walk across and would meet him in the parking lot on the United States side. The two waited for Varela on the United States side for approximately 30 minutes. The defendant was physically present near the area where the sample was distributed, but he never left the truck.[1]

The question is, do the factors above constitute proof beyond a reasonable doubt that the defendant aided and abetted the knowing possession with intent to distribute the sample. Madera testified that he had not discussed heroin with the defendant and that he made an excuse, the nature of which he did not recall, as to why he wished to walk across. Madera's behavior was suspicious, but the defendant's mere presence around suspicious activity " 'will not support an inference of participation' ... in the criminal activity." *United States v. Sneed,* 705 F.2d 745, 750 (5th Cir.1983) (*quoting United States v. Vergara,* 687 F.2d 57, 61 (5th Cir.1982)). Nonetheless, from Madera's behavior at the border crossing, the wait after the crossing, and the drive to Munoz' apart-

ment and the meetings to which Hernandez–Beltran drove Madera, the jury could have inferred that the defendant had knowledge of Madera's purpose and chose to aid him in it. The evidence, viewed in the light most favorable to the government, was sufficient to support the defendant's conviction for possession with intent to distribute one gram of heroin.

### 3. *Possession With Intent to Distribute One Ounce*

■ The defendant was not involved in the sale of the ounce to Brogdan. Munoz, Madera, and Varela discussed this sale after the defendant had returned to Mexico. The delivery was made by Madera and Munoz. There is no evidence connecting the defendant with this count. The only connection between the defendant and this count is that he aided and abetted Madera in delivering the sample which preceded this sale. However the government did not introduce direct proof that the defendant knew what, or how much, Madera was carrying on that first trip; nor was there any evidence that the defendant knew at the time that this transaction was intended to lead to a series of transactions. Further, the meeting at which Munoz, Madera and Varela planned the sale of the ounce occurred after the defendant had returned to Mexico. Because the government produced no evidence linking the defendant to the one ounce sale, the evidence is insufficient to support the defendant's conviction for possession with intent to distribute one ounce of heroin.

### B. The Sentence.

■ The district court sentenced the defendant to three concurrent five-year sentences on the three counts. At the sentencing hearing, the district judge stated that although Hernandez–Beltran was a minor participant in the crimes he was bound by statute to impose a minimum sentence of five years imprisonment. 21 U.S.C. § 841(b)(1)(B). The defendant asserts that the mandatory minimum sentence was not

---

1. Madera testified that Henandez–Beltran had errands to do in town, but the testimony did not reveal that anything was done other than waiting for Varela and proceeding to Munoz' house.

required because the court failed to instruct the jury that, on the 16 ounce count, the government had to prove that the defendant possessed at least 100 grams of heroin. The defendant did not object to the omission at trial; therefore, review is for plain error. *United States v. Walker,* 861 F.2d 810, 811–12 (5th Cir.1988).

The uncontroverted evidence at trial demonstrated that the last transaction involved 376.4 grams of heroin. (The indictment alleged a transaction of approximately 16 ounces or 494 grams.) Section 841(b)(1)(B) mandates a minimum sentence of five-years imprisonment for a person convicted of a violation of § 841(a)(1) involving 100 grams or more of a mixture containing a detectable amount of heroin. We have not directly addressed this issue. Both the Eighth and Tenth Circuits, however, have stated that, where the indictment alleges an amount greater than 100 grams and the uncontroverted proof at trial is that the amount involved is greater than 100 grams, the district court must sentence under § 841(b)(1)(B). *United States v. Agyen,* 842 F.2d 203, 205 (8th Cir.), *cert. denied,* ___ U.S. ___, 108 S.Ct. 2021, 100 L.Ed.2d 608 (1988) (appellant complained that jury was not instructed to make specific fact-findings) *United States v. Brandon,* 847 F.2d 625, 630–31 (10th Cir.), *cert. denied,* ___ U.S. ___, 109 S.Ct. 510, 102 L.Ed.2d 545 (1988) (appellant asserted jury had to make specific finding as to amount). We agree with the decisions of our sister circuits. Where, as here, an indictment alleges that a transaction involves an amount greater than 100 grams and the uncontroverted proof at trial supports that allegation, the district court must sentence under § 841(b)(1)(B). The trial court did not err in sentencing the defendant.

### IV. *Conclusion*

The evidence in this case was sufficient to support the defendant's conviction for possession with intent to distribute 16 ounces of heroin and his conviction of possession with intent to distribute 1 gram of heroin. We AFFIRM these convictions. The evidence was not sufficient, however, to support the defendant's conviction for possession with intent to distribute one ounce of heroin. We therefore REVERSE this conviction and the sentence imposed for it. Finally, we AFFIRM the other sentences imposed on the defendant by the district court.

The judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART.