**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Bedford FISHER,**
**Defendant–Appellant.**

**No. 89–5724.**

United States Court of Appeals,
Fourth Circuit.

Argued July 17, 1990.

Decided Aug. 30, 1990.

As Amended Sept. 19, 1990.

James Clinton Turk, Jr., Stone, Hamrick, Harrison & Turk, Radford, Va., for defendant-appellant.

Thomas Jack Bondurant, Jr., Asst. U.S. Atty., argued (John P. Alderman, U.S. Atty., Roanoke, Va., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

PHILLIPS, Circuit Judge:

James Bedford Fisher was convicted on three felony narcotics and weapons counts following a jury trial. The guilty verdict was rendered by an eleven member jury, the twelfth juror having been excused for cause by the district court after the jury had been empaneled and the trial begun. On appeal, Fisher contends that his oral consent to have his case heard by eleven jurors was an ineffective waiver of his right to a trial by twelve jurors. He also claims that the evidence was insufficient for conviction on the count charging possession with intent to distribute narcotics. We find Fisher's contentions without merit and therefore affirm.

I

On June 16, 1988, Roanoke, Virginia, police executed a search warrant on a house owned by Neva Muse. Muse rented the basement of the house to Fisher. The police observed Fisher in the basement with a handgun in his possession. Upon searching the basement bedroom area, police seized 1.52 grams of cocaine, which was packaged in four small "baggie corners,"[1] found inside a black leather pouch. The leather pouch containing the cocaine was found underneath a pair of Fisher's jeans. In the pockets of the jeans the police found $1655.42 in cash. The police also seized numerous plastic baggies and baggie corners, $150 in cash found near the waterbed in the room, a marijuana cigarette, and another handgun. Officer Cindy Matney testified that 1.52 grams of cocaine was not a very large amount but that packaging in baggie corners was commonly associated with street sales.

Fisher was charged in a three count indictment with using or carrying a firearm

---

1. A "baggie corner" is simply the corner cut out of a plastic sandwich bag.

during a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1) (count one); possession with intent to distribute cocaine, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C) (count 2); and possession of a firearm by a convicted felon,[2] *see* 18 U.S.C. §§ 922(g)(1), 924(a)(2) (count three). A twelve member jury was empaneled; no alternates were retained. After opening statements were made, the government discovered that one of the jurors had not revealed in response to a question posed by the court that a family member (husband) had been convicted of a felony. The court excused the jury and held a session in chambers with the juror, the defendant and his counsel, and the prosecutor present. The session was recorded. The court noted disappointment that the juror had not paid attention, adding that "this is causing a great deal of problems for us, because we have let the other jurors go." Joint Appendix at 53. The juror admitted her misstatement and was excused by the court. The following colloquy then occurred:

> THE COURT: All right, is my understanding that with—(The record will show that Mr. Fisher is in here.) that Mr. Fisher is willing to go forward with eleven jurors. Is that correct, Mr. Fisher?
>
> MR. FISHER: Uh-huh.
>
> THE COURT: So we will proceed with the eleven jurors. And the government is willing to go forward?
>
> MR. BONDURANT [prosecutor]: Yes, sir.
>
> THE COURT: All right. I'm glad we caught it at this stage of the game anyway. Anything else we need to get on the record?
>
> MR. TURK [defense attorney]: No, sir.

*Id.* at 53–54.

The court reconvened the jury and explained that one of the jurors had been disqualified for her misstatement during *voir dire.* The court added that "[b]ut for the agreement of counsel that we could proceed with eleven jurors, we would have had to—everything that we've done today would have gone for nought." *Id.* at 54.

The trial then proceeded without further comment from the court, counsel, or the defendant.

The jury convicted Fisher on all three counts. The court sentenced Fisher to ninety months imprisonment. Fisher timely noted his appeal and raises two principal issues for review. First, he contends that the government failed to present sufficient evidence of any "intent to distribute" on his part, mandating reversal of his conviction for possession of cocaine with intent to distribute. Fisher's primary argument, however, is that a new trial is warranted because his oral, in-chambers consent was not an effective waiver of his right to a trial by twelve jurors. We address first the fundamental sufficiency of the evidence challenge, and then the waiver issue.

## II

When a defendant challenges the sufficiency of the evidence used to convict him, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). Conviction under 21 U.S.C. § 841(a)(1) for possession with intent to distribute a controlled substance requires proof of specific intent to distribute. *See, e.g., United States v. Hernandez–Beltran,* 867 F.2d 224, 226 (5th Cir.1989) (per curiam). Intent to distribute may be inferred from possession of drug-packaging paraphernalia or a quantity of drugs larger than needed for personal use. *See United States v. Castellanos,* 731 F.2d 979, 985 (D.C.Cir.1984). Possession of a small quantity of drugs by itself is an insufficient basis from which intent to distribute may be inferred. *See United States v. Eng,* 753 F.2d 683, 687 (8th Cir. 1985).

Viewed in the light most favorable to the government, there was sufficient evidence from which the jury could infer

2. Fisher had been convicted of multiple prior drug felonies.

Fisher's intent to distribute. He possessed cocaine. The cocaine found in his room was packaged for street sale. Baggies and baggie corners are well-known tools of the narcotics distribution trade. The large amount of cash found in Fisher's possession and his ownership of handguns is additional circumstantial evidence of his involvement in narcotics distribution. Finally, the jury heard Fisher admit on cross-examination that he had prior narcotics convictions and might have evaluated as simply not credible his testimony that the cocaine seized was not his.

█ Our conclusion that the evidence was sufficient to support Fisher's conviction for possession with intent to distribute cocaine undercuts the related argument that his conviction under 18 U.S.C. § 924(c)(1) must also fall. Fisher argued that he could not be convicted of a "trafficking" crime and so could not be convicted under § 924(c)(1) for using or carrying a firearm during a drug trafficking crime.[3] Possession with intent to distribute is unquestionably a drug trafficking crime, see, e.g., United States v. Garrett, 903 F.2d 1105 (7th Cir.1990), and we therefore need not consider Fisher's contention that mere possession should not be considered a trafficking crime for purposes of the firearms statute.

## III

### A

A federal criminal defendant's right to a trial by jury is secured by the Constitution and the Federal Rules of Criminal Procedure. See U.S. Const. art. 3, § 2, cl. 3; id. amend. VI; Fed.R.Crim.P. 23; see also United States v. Virginia Erection Corp., 335 F.2d 868, 870 (4th Cir.1964). The Federal Rules also require that a jury shall have twelve members, unless that right is waived.

Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences. Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

Fed.R.Crim.P. 23(b). The rule's requirement of a written stipulation has been deemed procedural, and courts have found oral stipulations valid where the defendant personally gave knowing and intelligent consent in open court. See, e.g., United States v. Lane, 479 F.2d 1134, 1136–37 (6th Cir.1973) (per curiam); United States v. Ricks, 475 F.2d 1326, 1328 (D.C.Cir.1973) (per curiam); United States v. Guerrero–Peralta, 446 F.2d 876, 877 (9th Cir.1971); see also Patton v. United States, 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930) ("express and intelligent consent of the defendant" required; counsel stipulated and defendant personally assented in open court to proceed with eleven jurors).[4] See generally 8A J. Moore, Moore's Federal Practice, ¶ 23.04[2], at 23–26 (2d ed. 1990) ("[T]he courts of appeals have not imposed a rigid, 'bright-line' rule that the defendant must write or sign such a stipulation as a prerequisite to a valid consent to a reduced jury."). Some courts have gone even further, holding that oral consent of defense counsel, in open court and with the defendant present, is sufficient under Rule 23(b) to waive the right to a twelve member jury. See United States v. Roby, 592 F.2d 406, 408 (8th Cir.1979) (per curiam); Williams v. United States, 332 F.2d 36, 38–39 (7th Cir.1964); Horne v. United States, 264 F.2d 40, 41–43 (5th Cir.1959);

---

**3.** A drug trafficking crime is defined as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et. seq.)." 18 U.S.C. § 924(c)(2).

**4.** Patton predates the enactment of the Federal Rules, but the Advisory Committee's Note indicates that the Rule 23(b) "is a restatement of existing practice, the constitutionality of which was approved in Patton v. United States." Fed.R.Crim.P. 23(b) advisory committee's note.

*see also United States v. Spiegel,* 604 F.2d 961, 964–66 (5th Cir.1979) (defense counsel consented orally at side bar conference and signed written agreement).[5] *But see United States v. Reyes,* 603 F.2d 69 (9th Cir. 1979) (defense counsel's oral consent in open court insufficient).

## B

■ We have not found any case with facts on all fours with this one. No court, as far as we have been able to determine, has held that a defendant's oral consent given in chambers is sufficient under Rule 23(b) to waive the right to a twelve member jury. But no court has held that Rule 23(b) is not satisfied if a defendant gives knowing and intelligent consent in chambers and the agreement reached is announced in the presence of the defendant and his counsel in open court. On the facts of this case, we hold that Fisher validly waived his right under Rule 23(b) to a twelve member jury.

We note first that the court did address Fisher individually, and he expressly affirmed his willingness to proceed with eleven jurors. His response, though brief, satisfies the requirement that the defendant's consent be personal and express. *See Ricks,* 475 F.2d at 1327. We therefore need not stretch Rule 23(b) as far as those courts that have held that a defendant may be bound by his counsel's oral consent. Further, Fisher has never claimed that his consent was involuntary, and he presents no facts that would support any inference that the waiver was not knowing, voluntary, and intelligent. The district court, which was in the best position to judge the character of Fisher's actions, gave no indication of any concern that Fisher's consent was anything but knowing, voluntary, and intelligent.

As Fisher points out, however, his oral consent was not given in open court. Rule 23(b) by its terms requires written consent, but the courts willing to accept a defendant's oral waiver have added the further judicial gloss that such consent should be given in open court. Though the rationale for this judicially imposed requirement is not spelled out in the cases, we assume that it is thought to guarantee the defendant's awareness of the seriousness of his decision, *see Reyes,* 603 F.2d at 71, and to prevent the reality or even the appearance of coercive, "back room" proceedings.

We are not persuaded that the validity of Fisher's waiver is undermined in this case by his failure to give his consent in open court. Fisher was present during the court's session with the offending juror and knew that she was to be dismissed. The court reporter was present, evidencing the solemnity of the session and guaranteeing that no star-chamber coercion took place. The district court's treatment of the juror's disqualification as a serious matter is express in the record; Fisher knew that an important matter was at issue and when the court addressed him that an important personal right was affected. Following the in-chambers session, the court announced in open court that an agreement had been reached to proceed with eleven jurors. At no time did Fisher or his counsel raise any objection to the proceedings. The opportunity for sandbagging that would be created by a rule that permitted such objections to be first raised after verdict must be considered.[6]

We think it is also critical that Rule 23(b) itself countenances a defendant's out-of-court consent to a jury of less than twelve. The rule states that the defendant's stipulation to a jury of less than twelve must be written; the circumstances surrounding the giving of such consent are not addressed. Obviously, such a written stipulation may be negotiated and signed out of court. Considering all the facts in this

---

**5.** Both *Williams* and *Horne* involved collateral review of the district courts' respective denials of post-judgment relief; *Roby* and *Spiegel* were direct appeals.

**6.** Nothing in the record indicates that Fisher or his counsel had ulterior motives and we do not wish to indicate otherwise. During oral argument before us, counsel indicated that he was unaware of the requirements of Rule 23(b) until sometime later in the midst of the trial. We accept that representation without hesitation. The concern expressed is with the precedential effect of such a general rule, not with the conduct in this case.

case, we think the intent of the rule to ensure that the defendant expressly consents to a jury of less than twelve was satisfied and that Fisher's consent here must be deemed voluntary, knowing, and intelligent.

■ Finally, we observe that acceptance of Fisher's consent to a trial by eleven jurors does not offend the underlying constitutional right to jury trial, which does not include the right to a jury of twelve. *See Williams v. Florida*, 399 U.S. 78, 98–103, 90 S.Ct. 1893, 1904–07, 26 L.Ed.2d 446 (1970). As the Advisory Committee to the Federal Rules stated in explaining the amendment to Rule 23(b), not applicable here, that permits a district court to proceed with eleven jurors should it be necessary to excuse a juror for cause after the jury has retired to consider its verdict, "quite clearly the occasional use of a jury of slightly less than 12 ... is constitutional." Fed.R.Crim.P. 23(b) advisory committee's note to 1983 amendment. Though we agree with other courts that have considered the question of an oral waiver under Rule 23(b), *see, e.g., United States v. Essex*, 734 F.2d 832, 838 n. 6 (D.C.Cir.1984), that the procedure followed in this case is not to be approved, we are satisfied that the essential feature of the constitutionally mandated jury was nevertheless preserved. "[T]he commonsense judgment of a group of laymen ... large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representative cross-section of the community" was interposed between Fisher and his government accusers. *See Williams v. Florida*, 399 U.S. at 100, 90 S.Ct. at 1905–06. We are therefore unwilling to overturn the solemn verdict rendered by the jury composed here in accordance with Fisher's sufficiently documented consent.

## IV

We hold that the government presented sufficient evidence to convict appellant

Fisher of possession of cocaine with intent to distribute. We also hold that, on the facts of this case, Fisher's consent to a jury of eleven members was a valid waiver of his right to a twelve member jury under Fed.R.Crim.P. 23(b). We therefore affirm the judgment entered by the district court.

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

In dissenting, I concede extreme dexterity in the use of judicial tools to Judge Phillips. It is the choice of the place to apply them to which I object. The majority has converted the fact that something has never been done into a justification for doing it.[1] Of course, there must always be a first time, but this is not the case in which such an uncertain manner of proceeding should be invoked. When one's liberty is at stake is not the occasion for fudging the rules and especially their questionable application by the trial judge only to avoid the inconvenience that would follow upon making the rules, drafted in large measure to ensure fair trial, applicable.

Rule 23(b) of the Federal Rules of Criminal Procedure reads:

Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences. Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

The rule calls for the approval by the court of a written stipulation of the parties. Clearly, court approval is present here, but the required writing is not. It is true that

---

1. The majority states: "No court, as far as we have been able to determine, has held that a defendant's oral consent given in chambers is sufficient under Rule 23(b) to waive the right to a twelve member jury." Op. at 732.

the "plain meaning" of "in writing" as used in Rule 23(b) has been whittled away when the defendant's express, knowing and intelligent consent or assent has been given orally in open court. *See, e.g., United States v. Lane,* 479 F.2d 1134, 1136–37 (6th Cir.1973); *United States v. Ricks,* 475 F.2d 1326, 1328 (D.C.Cir.1973); *United States v. Guerrero–Peralta,* 446 F.2d 876, 877 (9th Cir.1971). In open court, the stenographer's almost certain presence ensures the equivalent of writing by the defendant. To be sure, the conversation in chambers at issue here regarding the juror's dismissal was recorded. I agree that, in this case, no star chamber coercion actually took place. Avoiding such a possibility of coercion is certainly one justification for the open court requirement. It is not the only rationale, however.

In chambers, without the jury's presence, is a more informal environment than that of open court. Fisher's "uh-huh", his only resort to the glory of our civilization, the English tongue, is evidence of just such informality. The requirement of a writing signed by the defendant as mandated by the rule or by what has been deemed its equivalent, questioning of the defendant in open court, serves more than just to provide evidence of consent. It serves to "underscore the significant decision faced by the parties." *United States v. Reyes,* 603 F.2d 69, 71 (9th Cir.1979).

An understanding of that significance is precisely why evidence of express, voluntary, and *knowing* consent has been held to be so important. *See United States v. Taylor,* 498 F.2d 390, 392 (6th Cir.1974) (In finding that oral stipulation by counsel was not enough the court stated: "[W]aiver of a jury trial, even the waiver of one juror, is the waiver of a basic and important right which cannot be accomplished upon 'a silent record.'") (citation omitted). The procedure has been compared to that required by Fed.R.Crim.P. 11 governing the accept-

ance of a guilty plea and to Fed.R.Crim.P. 23(a) governing a defendant's complete waiver of a jury trial. *See Reyes,* 603 F.2d at 71 ("Both the requirement of a writing signed by the defendant, and questioning of the defendant in open court, indicate to the defendant that the decision whether to agree to a jury of less than twelve persons is an important step in the trial.").

Though the majority concludes that Fisher's consent, arguably express and voluntary, was also knowing,[2] I cannot agree. Finding no evidence that the consent was "not knowing" is hardly finding evidence that Fisher knew to what he was consenting. It is a fundamental truth that it is difficult to prove a negative.[3] By no stretch of the imagination can Fisher's "uh-huh" in response to the judge's assumption that the procedure was all right with him be found to be a knowing, much less an intelligent, waiver.

The district judge was obviously annoyed at the juror. He stated to her that "I'm somewhat disappointed. I asked you to pay attention to the questions and to listen to them, and this is causing a great deal of problems for us, because we have let the other jurors go." Joint Appendix at 53. There is no evidence that Fisher knew what those problems were or knew that he personally had a say in the matter. Given the judge's demonstrated impatience with the juror, it would not be unreasonable to conclude that Fisher's "uh-huh" was uttered to avoid disappointing the judge further. Nothing adds up to star chamber tactics but it does point out why the requirement of a brief colloquy between judge and defendant in open court should remain the minimum requirement. Without it, we are left to glean inferences that the consent was knowingly and expressly given from less than direct language in the more informal atmosphere of chambers. Stretching

---

**2.** *See* Op. at 732 ("[Fisher] presents no facts that would support any inference that the waiver was not knowing.").

**3.** While it is often said that "not to decide" is "to decide," the same does not follow for "not knowing" and "knowing." Casting on the defen-

dant the burden of proof, the assuming in the circumstances we are here considering, that silence means consent, essentially eviscerates the safeguards Rule 23 was so careful to erect to protect against a decision not fully considered to abandon a valued right to twelve jurors.

"no evidence that the consent was not knowing" to the equivalent of "evidence of knowing consent" is without justification.

Furthermore, Fisher was entitled to informed legal advice when the question of whether to proceed with an eleven member jury came up. The question was an involved technical one for those learned in the law, not for a presumably uninformed layman like Fisher. His counsel, with becoming candor, freely admits that he was unaware of the requirements of Rule 23(b) and so was in no position to take a stand or to advise on the question. An interruption should have taken place to permit defendant's counsel to inform first himself, then Fisher. The atmosphere of a meeting in chambers to discuss the matter while most, but not all, of the jury is out in court, waiting to begin the trial, is hardly conducive to a defendant's insisting on delay to inform himself. The majority relies on the fact that a written stipulation waiving a juror "may be negotiated and signed *out of court.*" (Emphasis supplied.)[4] Ironically, the *adequate* assistance of counsel required by Fisher here would probably come outside the hearing of the court. With the resulting opportunity to inform himself, counsel could hardly have allowed a simple "uh-huh", uttered immediately and without reflection, to stand as a knowing and intelligent consent by someone unaware of the intricacies of Rule 23(b) and the safeguards it is intended to create. Certainly Fisher's utterance in the presence of court and prosecuting counsel precluded the giving of confidential advice out of their hearing, advice to which Fisher was entitled. At the very least, interruption for a brief colloquy in open court between the judge and Fisher would ensure that Fisher was fully apprised of his rights and the significance of his decision to relinquish them.

The majority also finds the requisite express, intelligent, and knowing consent in the failure of counsel and Fisher to object when the agreement to proceed with eleven jurors was announced in open court.[5] As I have stated, Fisher's "uh-huh" in chambers possibly can be found to be express, in the sense of uttered out loud. Such express consent, however, cannot properly be found through Fisher's silence when the judge, in open court, announced that *counsel* had agreed to proceed with eleven jurors and Fisher did not leap up in protest. The majority concedes that Fed.R.Crim.P. 23(b) need not be stretched in the present case to hold that "a defendant may be bound by his counsel's oral consent." Op. at 732. Neither, however, by the same token, should a defendant be bound by counsel's or his own complete silence under the circumstances here. The complete muteness of Fisher and of his counsel, too, is of concern. It simply did not constitute express consent. To call "silence" evidence of express consent turns language on its head. Certainly a rule permitting objections after verdict presents an opportunity for sandbagging. There was, however, no sign of such skullduggery here. The holding here permitting an "uh-huh" in chambers followed by no objection in open court to qualify as express, knowing and intelligent consent places us at the top of a very slippery slope.

As for the other contentions asserted by Fisher, I agree with the majority opinion. The majority stretches Rule 23(b), however, to the point where the objective is to ensure only the mock appearance of a fair and unbiased trial. Such a stretch is a distorted one, and I respectfully dissent.

---

**4.** Op. at 732.

**5.** The majority states: "Following the in-chambers session, the court announced in open court that an agreement had been reached to proceed with eleven jurors. At no time did Fisher or his counsel raise any objection to the proceedings."

Op. at 732. The judge, however, specifically announced that "but for the agreement of counsel that we could proceed with eleven jurors, we would have had to—everything that we've done today would have gone for nought." Joint Appendix at 54.