928 F.2d 405
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rickey L. PRESSLEY, Defendant-Appellant.
 No. 90-3190.
 United States Court of Appeals, Sixth Circuit.
 March 11, 1991.
 
 On Appeal from the United States District Court for the Northern District of Ohio, No. 89-00739; John W. Potter, J.
 N.D.Ohio
 AFFIRMED.
 Before KENNEDY and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Rickey Pressley, was indicted May 25, 1989, on two counts of possession of controlled substances with intent to distribute in violation of 21 U.S.C. section 841, and one count of possession of firearms in connection with drug trafficking offenses in violation of 18 U.S.C. section 924(c). Pressley was convicted on all three counts on February 28, 1990, from which he brought the present appeal.
 
 I.
 
 2
 The events leading to defendant's indictment began in late 1988, when police were informed of Pressley's involvement in the narcotics trade. Police searched defendant's trash on February 2, 1989, and recovered baggies containing cocaine residue as well as other items useful in narcotics distribution. A search warrant for defendant's home was obtained the next day on the basis of an affidavit detailing the anonymous tips and the results of the search of his garbage.
 
 
 3
 The search warrant was executed on February 4, 1989. The defendant was discovered in the bedroom of the home at the time of the search and, upon being asked if there were narcotics in the home, led police to a kitchen cabinet containing a substantial amount of cocaine in various forms. Officers also recovered paraphernalia for the packaging of cocaine for distribution. Several weapons were discovered in the home. A .38-caliber handgun was found on the headboard in defendant's bedroom. The handgun was loaded, but was later discovered to be lacking a firing pin. An unloaded shotgun was also found in the bedroom. Ammunition for the shotgun was found in the bedroom closet. Two other shotguns, also unloaded, were found behind the living room sofa, leaned upright against the wall. $105,347 in small bills was discovered in an automobile in the garage, in addition to $3748 found inside the home.
 
 II.
 
 4
 Pressley raises five grounds for appeal. He contends first that his equal protection right was violated by a peremptory challenge to the sole venireperson of the same race as the defendant. Pressley also challenges the sufficiency of the evidence as to the drug trafficking counts. Third, defendant challenges the sufficiency of the evidence as to the firearms count. Defendant also assigns as error the rulings of the district court sustaining objections to certain testimony of two defense witnesses. Finally, defendant asserts that the district court erred in declining to suppress the fruits of the search or hold a hearing into the validity of the warrant. We address these contentions in the order raised by the defendant.
 
 A. Jury Selection Based on Race
 
 5
 In Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme Court held that the calculated challenge of jurors of the same race as the defendant constitutes a violation of the constitutional right to equal protection. The Court stated that in order to make out a prima facie case, the defendant must show (1) membership in a cognizable racial group, (2) against which the prosecution exercises challenges, (3) under circumstances raising an inference of discriminatory intent. Id. at 96.
 
 
 6
 In the present case a single challenge, to the only member of the venire panel of the same race as the defendant, is assigned as violative of equal protection. At the time defendant's objection to the peremptory challenge at issue was entered, the prosecution made the following record of its reasons for making the challenge:
 
 
 7
 [T]his juror is 29 years old, the other two jurors that I have excused were under 30 years of age. I'm sure that that pattern will develop as the voir dire goes on.
 
 
 8
 Furthermore, she is not married, has two children, one eleven months old and one which was just born. She ... has never been employed, therefore, has in my view the Government's view, has little stake in the community. She rents her house. She--each of these in and of themselves I agree may be insufficient factors, however, an individual who is under the age of 30 years old, has never been employed seems to the Government--well, the Government does not believe she is an appropriate and efficient for this jury.
 
 
 9
 The essence of the defendant's argument is that these criteria, if used across the board, would have a disparate impact upon members of the defendant's race, and therefore the articulated rationales were not racially neutral, but were discriminatory. We do not agree that all of the factors articulated by the prosecution would have such an effect, and moreover, defendant has no made a proper record upon which to draw such a conclusion.
 
 
 10
 We agree with the defendant that it is not essential that more than one challenge be exercised in order to infer discriminatory intent, but the circumstances here do not lead to such an inference. Defendant relies upon the observation of the Ninth Circuit Court of Appeals that a "prosecutor's disparate treatment of veniremen who were similar in relevant aspects except race" may, in the absence of other neutral selection criteria, be a violation of the equal protection clause, United States v. Horsley, 864 F.2d 1543, 1546 (11th Cir.1989), without suggesting that the government in fact did not apply the articulated rationale to this panel in a race-neutral manner. Whether such a rationale might produce a racially discriminatory impact under other circumstances is not the question. There is no record made in this case to support the claim.
 
 
 11
 United States v. McCoy, 848 F.2d 743 (6th Cir.1988), is more on point. There, a peremptory challenge based upon the prospective juror's unemployment was upheld. The court there, as we must here, looked to the circumstances of the jury selection which in fact occurred. The record in McCoy showed that a venireperson of a different race had been excluded for the same reason, and furthermore, that two persons of the same race as the defendant served on the jury which convicted him.
 
 
 12
 Here, no jurors were selected who were of the same race as the defendant. However, the record indicates that the prosecution applied its criteria in a race-neutral fashion by challenging other venirepersons, not of the same race as Pressley, on identical grounds. Under these circumstances, we find no violation of Pressley's constitutional rights occurred.
 
 
 13
 B. Sufficiency of the Evidence: The Narcotics Counts
 
 
 14
 In reviewing the sufficiency of the evidence, this court views the evidence in the light most favorable to the prosecution. United States v. Ellzey, 874 F.2d 324 (6th Cir.1989). The pertinent question is whether, bearing this standard in mind, a reasonable juror could have "found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 15
 There was ample evidence on the basis of the drugs and paraphernalia found at the home to support defendant's conviction. Defendant concedes that the large amount of narcotics found here is a sufficient predicate from which to infer an intent to distribute. United States v. Hernandez-Beltran, 867 F.2d 224 (5th Cir.), cert. denied, 490 U.S. 1094 (1989). Further, while it is not material to the inquiry into the sufficiency of the evidence, the defendant's theories that the drug-trafficking articles were placed in his home without his knowledge in order to incriminate him, and that the $105,347 in small bills were the result of a church candy sale entrusted to him for safe-keeping, lacked credibility under the circumstances.
 
 
 16
 C. Sufficiency of the Evidence: The Firearms Count
 
 
 17
 The defendant's argument that there was insufficient evidence upon which to convict him for the weapons count is evaluated under the standard articulated above. 18 U.S.C. Sec. 924(c) provides, in relevant part:
 
 
 18
 Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a machinegun, or is equipped with a firearm silencer or firearm muffler, to imprisonment for life imprisonment without release....
 
 
 19
 Pressley argues that it was not shown that he "used or carried" the firearms "during and in relation to" the drug trafficking. 18 U.S.C. 924(c). This court has broadly construed the language of 18 U.S.C. section 924(c). We have concluded that the word "carries" does not mean actual possession, and "uses" does not mean brandishment or display. United States v. Acosta-Cazares, 878 F.2d 945 (6th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 255 (1989). Rather, the court has recognized the "fortress analogy" in construing the section:
 
 
 20
 [I]f it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used "during and in relation to a drug trafficking crime."
 
 
 21
 United States v. Henry, 878 F.2d 937 (6th Cir.1989). Thus, the "in relation to" element of this section is satisfied "if from the circumstances or otherwise it could be found that the defendant intended to use the gun if a contingency arose or to make his escape." Id. at 943 n. 5. Further, unloaded or inoperable guns qualify as firearms and fall within the ambit of section 924(c); their unloaded or inoperable status is not determinative on the issue of whether the guns were "used." United States v. Munoz-Fabela, 896 F.2d 908 (5th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 76 (1990); United States v. York, 830 F.2d 885 (8th Cir.1987), cert. denied, 484 U.S. 1074 (1988) (concluding that firearm lacking a firing pin fell within the scope of 924(c)). It is sufficient if a firearm was used to facilitate the crime, including emboldening the actor or intimidating others. United States v. Stewart, 779 F.2d 538 (9th Cir.1985). Given the number and strategic locations of these weapons within defendant's home, which also featured a sophisticated alarm system, we conclude that the evidence is sufficient to sustain defendant's conviction based upon violation of section 924(c).
 
 D. Exclusion of Testimony
 
 22
 Defendant asserts that the trial court erred in excluding testimony of defense witnesses Harris and Williamson. Their combined testimony formed the basis for the defense theory that the drugs and distribution essentials found in the kitchen of Pressley's home were placed there by others. Harris, Pressley's former girlfriend and the mother of his child, testified that she gave Anderson, her boyfriend subsequent to Pressley, the key and access code to Pressley's residence. Williamson, in turn, testified that he accompanied Anderson to Pressley's home on February 3, 1989, and saw him put the articles in the kitchen. Anderson was deceased at the time of trial. The district court sustained prosecution hearsay objections to Harris' and Williamson's proffered testimony as to statements made by Anderson going to his motives in placing the items in Pressley's home.
 
 
 23
 Although defendant here asserts that the Harris testimony went to Anderson's state of mind, and thus fell within an exception to the hearsay bar, defendant's counsel did not direct the district court to any applicable exception to the hearsay rule at the time the prosecution's objections were made. The advisory committee's notes to Fed.R.Evid. 103(a) provide that "[r]ulings on evidence cannot be assigned as error unless ... the nature of the error was called to the attention of the judge." We further can find no error in the exclusion of the testimony of Williamson in view of the fact that Anderson's motives do not make his testimony that Anderson placed the items in the house more or less probable. There was no error in excluding the testimony of either witness.
 
 E. The Search Warrant
 
 24
 Defendant's last contention is that the district court erred in denying his motion to suppress the fruits of the search or hold a hearing into the legitimacy of the search warrant. Defendant argues that the affidavit did not show probable cause because it was based upon the statements of an anonymous informant. Defendant contends that the police knew the identity of the informant, and that the defense should have been allowed to disprove the credibility of that individual.
 
 
 25
 We are of the opinion that the district court did not err, because the affidavit is clearly a sufficient predicate for the issuance of the warrant. Defendant's argument that the affidavit was based on an anonymous informant's statements is a mischaracterization. The affidavit recited the far more significant fact of the discovery of baggies containing traces of cocaine base in defendant's curbside trash. The reference to an anonymous informant, and various corroborating details of the anonymous informant's story, merely buttressed the substantive evidence. Moreover, defendant has failed to allege, pursuant to Franks v. Delaware, 438 U.S. 154 (1978), that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit...." We find no merit in this assignment of error.
 
 
 26
 AFFIRMED.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation