**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-4981**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SHAWN L. STARLING,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, Chief District Judge. (CR-05-55)

———————

Submitted: February 26, 2007          Decided: March 7, 2007

———————

Before WILKINSON, KING, and DUNCAN, Circuit Judges.

———————

Affirmed and remanded by unpublished per curiam opinion.

———————

Michael S. Nachmanoff, Acting Federal Public Defender, Frances H. Pratt, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Stephen W. Miller, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Shawn L. Starling appeals from his convictions and sentence, in the Eastern District of Virginia, for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Starling makes three contentions in this appeal: first, that the evidence was insufficient to support a finding that he intended to distribute cocaine; second, that the district court plainly erred in allowing the prosecution to conduct a redirect examination that exceeded the scope of cross-examination; and third, that his sentence was both procedurally and substantively unreasonable. As explained below, we reject each of these contentions and affirm.

I.

On the evening of September 16, 2004, Richmond Police officers Thomas Gilbert and George McLaughlin were on a routine patrol on Accommodation Street in Richmond, Virginia.[1] The location that the officers were patrolling "was a high crime area known for drug activity." J.A. 49.[2] As they drove on Accommodation Street, the

---

[1]The factual predicate for Starling's convictions is drawn from the trial record, and is spelled out in the light most favorable to the prosecution. See United States v. Pasquantino, 336 F.3d 321, 332 (4th Cir. 2003) (en banc).

[2]Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

2

officers noticed a group of individuals congregated in an area behind some apartments. The group began to disperse as the officers approached, and Starling was seen walking from the area where the group had been, carrying a handgun. The officers stopped Starling, retrieved the weapon (a .40 caliber Smith & Wesson semiautomatic pistol), and, in searching him, discovered 9.69 grams of cocaine base (commonly known as crack cocaine) in three separate plastic packets. The cocaine was hidden in Starling's underwear, between his legs. Starling also had on his person a $50 bill, a $20 bill, and a cellular telephone.

On February 3, 2005, Starling was indicted by the federal grand jury in Richmond for possession with intent to distribute cocaine base ("Count One"), possession of cocaine base ("Count Two"), possession of a firearm in furtherance of a drug trafficking crime ("Count Three"), and possession of a firearm by a user of controlled substances ("Count Four"). On May 2, 2005, the district court conducted a bench trial on the four charges in the indictment. At the trial, the prosecution called Special Agent James Terpening of the Drug Enforcement Administration (the "DEA"), as an expert witness in the field of narcotics trafficking. Terpening testified that the quantity and packaging of the cocaine base found on Starling "would be highly unusual for personal use," and that he had "not seen a user who would possess this amount of cocaine base." J.A. 36. Terpening also testified that "street-

3

level distributors will have items such as cell phones for communication, and they may or may not have firearms. They often have firearms." J.A. 35.

The prosecution also introduced the evidence of Officer Gilbert concerning his encounter with Starling. In its direct examination of Gilbert, the prosecution did not ask about the currency and the cell phone found on Starling, nor did defense counsel ask Gilbert about those items on cross-examination. In its redirect examination of Gilbert, however, the prosecution asked about "other items" that the police had recovered incident to Starling's arrest, and Gilbert responded that he had found "$70 U.S. currency, a $50 and a $20, and a cell phone." J.A. 28. The prosecution then introduced into evidence the cell phone and photographs of the currency retrieved from Starling at the time of his arrest. Defense counsel made no objection to the prosecution's redirect examination of Gilbert, and did not ask for recross-examination.

After the parties had presented their respective cases, the district court announced, from the bench, its findings of fact and conclusions of law. The court found that the officers had arrested Starling in an area known for drug activity, and that the quantity of cocaine base in Starling's possession at the time of his arrest, along with his possession of a handgun, indicated that he was engaged in the street-level distribution of drugs. J.A. 49-50.

4

The court also found that Starling's cash and cell phone were indicia of drug distribution.  Id.  Based on these findings, the court reached a verdict of guilty on Counts One, Two, and Three. The court determined, however, that the evidence did not support a finding that Starling was a user of cocaine base, and consequently found Starling not guilty on Count Four.  Id. at 50-51.

On September 7, 2005, the district court conducted Starling's sentencing hearing.  The court adopted the findings in the Presentence Report (the "PSR") that Starling had an offense level of 26 and a criminal history category of I under the advisory sentencing guidelines, and that his resultant guidelines range was 123 to 138 months' imprisonment — 63 to 78 months on Count One and 60 months on Count Three, with those terms to be served consecutively.[3]  Starling's statutory minimum sentence was 120 months, the sum of separate 60-month statutory minimums for Counts One and Three.  Starling requested a 3-month downward variance from the bottom of his guidelines range to the 120-month statutory minimum, citing his lack of criminal history and the fact that he had two dependents.  Without expressly commenting on Starling's request for a downward variance, the court sentenced him to 123 months' imprisonment, the shortest term consistent with his advisory guidelines range.  Starling did not object to any aspect

---

[3]Because Count Two was a lesser included offense of Count One, it was merged with Count One for sentencing purposes.

of the sentencing hearing. On the day Starling was sentenced, the court entered a Statement of Reasons for his sentence (the "Statement of Reasons"), which spelled out that "the sentence herein was imposed after having considered the advisory Sentencing Guidelines and the requirements of 18 U.S.C. § 3553(a)(1)-(3) and (5)-(7), and, after having exercised discretion to ascertain a reasonable sentence within the statutorily prescribed range."[4]

Starling has appealed his convictions on Counts One and Three, as well as his sentence, and we possess jurisdiction under 28 U.S.C. § 1291.[5]

## II.

In reviewing a contention concerning the sufficiency of evidence in support of a conviction, we view the evidence in the light most favorable to the prosecution, and inquire whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to establish the defendant's guilt beyond a reasonable doubt. See United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc); see also Glasser v. United States, 315 U.S. 60, 80 (1942) ("The verdict of a jury must be sustained if

---

[4]The district court's Statement of Reasons is found at J.A. 112-14.

[5]Starling acknowledges that his conviction on Count Two was free of error, and does not challenge it on appeal. See Appellant's Br. 22 ("[T]he only offense of which Mr. Starling could be properly convicted was the § 844 simple possession offense.").

there is substantial evidence, taking the view most favorable to the Government, to support it.").

When an appellant raises a contention of error that he failed to present to the district court in the first instance, we review it for plain error only. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). A defendant seeking to overturn a ruling under the plain-error test bears the burden of showing (1) that an error occurred, (2) that it was plain, and (3) that it affected his substantial rights. Olano, 507 U.S. at 732. The correction of plain error lies within our discretion, which we "should not exercise . . . unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks and brackets omitted).

Our task in reviewing a district court's sentence is to determine whether the sentence is within the statutorily prescribed range and is reasonable. United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006). Importantly, reasonableness review involves both procedural and substantive components. Id. at 434.


## III.

Starling makes three contentions of error on appeal. First, he maintains that there was insufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that he intended to distribute the cocaine base that was found hidden in his clothing.

7

Second, he asserts that the district court plainly erred in allowing the prosecution, in its redirect examination of Officer Gilbert, to introduce evidence of the cell phone and cash that were found on his person when he was arrested, because those items were not subject to his counsel's cross-examination of Gilbert. Starling further contends that we should notice this assertedly plain error and vacate his convictions based thereon. Third, Starling maintains that his sentence was procedurally unreasonable because the reasons for it were not adequately explained in open court, and substantively unreasonable because it was greater than necessary to comply with the purposes set forth in § 3553(a).

A.

Starling first contends that the evidence was insufficient for the district court to conclude that he intended to distribute cocaine base. Before we address Starling's specific contentions on this issue, we observe that the record reveals substantial support for the verdict. Under the evidence, Starling was apprehended carrying a handgun and 9.69 grams of cocaine base packaged in three separate plastic-bag corners, in an area known for drug activity and near a group of individuals who scattered when the police approached. Agent Terpening testified that the quantity of cocaine base found in Starling's possession was inconsistent with personal use and, indeed, that in Terpening's career with the DEA he had

8

"not seen a user who would possess this amount of cocaine base."
J.A. 36. Our precedents leave no doubt that "intent to distribute
may in proper circumstances be inferred from the amount of
possession." United States v. Welebir, 498 F.2d 346, 350 (4th Cir.
1974). Terpening also testified that individuals engaged in drug
distribution often have firearms. Our decisions have acknowledged
that the possession of a handgun along with a controlled substance
is strong circumstantial evidence of intent to distribute, as is
packaging of drugs in a manner that would facilitate their sale.
See United States v. Fisher, 912 F.2d 728, 731 (4th Cir. 1990).
The possession of a large quantity of a controlled substance in an
area known for its high level of drug trafficking is likewise
evidence of intent to distribute. See United States v. Collins,
412 F.3d 515, 518 (4th Cir. 2005). The fact that the group of
people around Terpening dispersed when the police officers
approached provides further support for the verdict.

Starling offers five reasons that the evidence we have
summarized above was insufficient to support the verdict. He
begins by asserting that the prosecution's decision to charge him
(in Count Two) with simple possession, in addition to possession
with intent to distribute, amounts to an admission that the
evidence on the distribution charge was inadequate to convict him.
Next, he observes that other defendants (in matters entirely
unrelated to this one) have possessed more cocaine base than he,

9

yet been acquitted of possession with intent to distribute; on that basis, he maintains that the district court erred in finding that the amount of cocaine base he possessed was inconsistent with mere personal use. Starling next contends that the cell phone, cash, and handgun found on his person do not indicate that he intended to distribute cocaine base. In addition, he asserts that the location in which he was hiding his cocaine base — in his underwear, between his legs — indicates that he did not intend to distribute it. Finally, he offers a list of factors that have, in other cases, demonstrated an intent to distribute, but that were not present here.

Starling's first two contentions on this point simply misapprehend the nature of our inquiry. Our task is to determine whether the evidence presented was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Starling intended to distribute cocaine base. The lesser included offense with which Starling was also charged has no bearing on the body of evidence that was before the district court, and thus is immaterial to our review of the sufficiency of that evidence. Similarly misplaced is Starling's reliance on precedents in which defendants who possessed more cocaine base than he have been acquitted of possession with intent to distribute. For one thing, the decisions on which he relies are inapposite. More fundamentally, though, even if Starling were to identify a precedent in which the

10

defendant was acquitted on facts identical to these, he would not thereby establish that no reasonable trier of fact could reach a different result.

The third point in Starling's attack on the sufficiency of the evidence is that the items he was carrying, other than the cocaine base itself, do not indicate an intent to distribute. With regard to the cell phone and the cash, he simply asserts (apparently for the first time on appeal, and with no reference to the record) that because cell phones have become ubiquitous in America and $70 is not an abnormally large sum to carry on one's person, those items are no indication of intent to distribute the cocaine base that he possessed. That contention misses the point. Carrying $70 and a cell phone may not, by itself, be sufficient to demonstrate an intent to distribute drugs. But according to Agent Terpening's testimony, such factors are at least somewhat probative, in that an intent to distribute is more likely in their presence than in their absence.

With respect to the handgun, Starling maintains that because he was in a high-crime area, it was plausible that he was carrying the weapon merely for self-defense. The existence of a conceivable alternative explanation for his possession of the pistol, however, does not diminish the strength of Terpening's testimony on the connection between handguns and drug distribution. And, of course, it in no way weakens the most significant evidentiary support for

11

the court's verdict: Starling's possession of cocaine base in a quantity inconsistent with personal use, packaged for convenient distribution.

Starling's fourth proffered reason that the evidence was insufficient is that the cocaine base was found in his underwear, between his legs. He contends on appeal that, if he had intended to distribute the cocaine, he would have stored it in a more accessible location, such as his pocket or the top of his underwear. Starling fails, however, to identify any evidence of record that the discovery of cocaine between his legs is inconsistent with drug distribution. As a result, his speculation in this regard has no bearing on whether the evidence before the court was sufficient to support his convictions.

Starling's fifth and final criticism of the sufficiency of the evidence suffers from the same defect. He lists a number of possible indicia of intent to distribute that he claims were not present here (e.g., no plastic sandwich bags or razors), but points to no evidence in the record that the absence of these additional indicia makes it unlikely that he lacked such an intent. An absence of factors whose significance was not mentioned at trial, much less established in the record, does not render insufficient the body of evidence that was actually adduced.

In sum, the evidence that Starling intended to distribute the cocaine base that he possessed was more than sufficient to support

12

the district court's guilty verdict on Counts One and Three. Starling's assertions to the contrary are thus without merit.

B.

Starling next contends that the district court committed plain error in allowing the prosecution to address, in its redirect examination of Officer Gilbert, matters not raised in defense counsel's cross-examination of Gilbert — specifically, the cell phone and cash discovered on Starling when he was arrested. Starling cites several commentators' observations that redirect examination is typically limited to subjects brought up in cross-examination. He is incorrect, however, in asserting that a party's redirect can never address matters not discussed in his opponent's cross-examination. The Rules of Evidence give trial courts discretion over "the mode and order of interrogating witnesses and presenting evidence," and do not bar the exercise of that discretion to allow inquiry into new subjects on redirect. See Fed. R. Evid. 611(a). Indeed, the very authorities that Starling misleadingly quotes in support of his position expressly recognize that a court may allow redirect on matters not raised in direct or cross-examination. See I Kenneth S. Broun, McCormick on Evidence § 32 (6th ed. 2006) ("[U]nder his general discretionary power to vary the normal order of proof, the judge may permit the party to bring out on redirect examination relevant matter which through

13

oversight he failed to elicit on direct."); 81 Am. Jur. 2d Witnesses § 740 (2004) (recognizing "court's discretion to allow on redirect examination questioning as to matters which properly should have been brought out on direct examination"). Starling's assignment of error in this regard is thus meritless. Because the district court committed no error at all in connection with the prosecution's redirect examination of Gilbert, Starling's plain-error contention on that point necessarily fails.

C.

1.

Finally, Starling maintains that his sentence is unreasonable and must be vacated. Specifically, he asserts that his sentence is procedurally unreasonable because the reasons for it were not explained in open court, and substantively unreasonable because it was greater than necessary to comply with the purposes of sentencing set forth in § 3553(a). We reject both of these contentions.

Section 3553(c) provides that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence." This provision also mandates that, if the sentence is within the advisory guidelines range and that range exceeds 24 months, the court must state its reason for selecting a sentence at a particular point within the

14

range.  18 U.S.C. § 3553(c)(1).  Starling asserts that the district court failed to provide any explanation in open court for the sentence it imposed.  The record, however, contradicts that assertion:  the court expressly stated that the basis for the sentence it imposed was its adoption of the PSR's findings regarding Starling's offense level, criminal history category, and advisory guidelines range.

The court did fail to explain its selection of the bottom of Starling's guidelines range — 123 months — as the appropriate sentence.  The court's omission in that regard, however, does not render Starling's sentence procedurally unreasonable.  To the contrary, the court's sentencing procedure was consistent with the standards established in our decisions:  it correctly calculated Starling's advisory guidelines range and, as explained in its written Statement of Reasons, found a 123-month sentence to be consistent with the requirements of § 3553(a) as applied to this matter.  Moreover, as we have observed, the court orally indicated that Starling's sentence was chosen because it comported with the sentencing guidelines.  When a court imposes a sentence within the advisory guidelines range, a procedure such as that conducted here is reasonable.  See United States v. Moreland, 437 F.3d 424, 432-33 (2006) (spelling out proper sentencing procedure in wake of United States v. Booker, 543 U.S. 220 (2005)).

Starling next contends that his sentence was substantively unreasonable because it was greater than necessary to comply with the purposes of sentencing spelled out in § 3553(a). We have recognized that a sentence within the advisory guidelines range is presumptively reasonable. See United States v. Green, 436 F.3d 449, 456-57 (4th Cir. 2006).[6] In seeking to overcome the presumption that his sentence is reasonable, Starling relies mainly on his two dependents and his lack of a prior criminal history. He fails to explain, however, how the fact that he has dependents distinguishes his situation from that contemplated by the advisory guidelines. Moreover, because Starling's lack of a criminal record has already been accounted for in the calculation of his criminal history category, it does not warrant a downward variance from his guidelines range. Starling also contends that the amount of cocaine base seized from him was too small to justify the sentence he received, but the quantity of drugs he was carrying was likewise reflected in his guidelines range, and is thus not a sound basis for a downward variance. In these circumstances, we conclude that

---

[6]Starling also seeks to persuade us to overrule Green's holding that a sentence within the advisory guidelines range is presumptively reasonable. His position in that regard is unavailing, for "[i]t is well settled that a panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that." United States v. Chong, 285 F.3d 343, 346 (4th Cir. 2002) (internal quotation marks omitted).

16

Starling's sentence was both procedurally and substantively reasonable, and we must reject his contention to the contrary.

2.

Although Starling's sentence was reasonable, there is a procedural defect concerning his sentencing that warrants remand. The district court's Judgment in a Criminal Case reflects that Starling was subject to separate $100 assessments for Counts One and Two. See J.A. 85. That instruction contradicts the court's oral order at Starling's sentencing hearing that he pay a single $100 assessment for the merged convictions on Counts One and Two. See id. at 78. We thus remand for the court to correct this clerical error in its written sentencing instructions. See United States v. Morse, 344 F.2d 27, 30-31 (4th Cir. 1965).

IV.

Pursuant to the foregoing, we affirm Starling's convictions and sentence, and remand for the Judgment in a Criminal Case to be corrected to reflect the sentence imposed.[7]

AFFIRMED AND REMANDED

---

[7]We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid in the decisional process.

17